## HAUF v. WILSON.

### (Circuit Court, W. D. Tennessee. July 6, 1887.)

**1. GARNISHMENT — STAY OF OTHER ACTION — NEGOTIABLE NOTE — STATE AND FEDERAL COURTS.**

Whatever may be the power of a court of law to stay a suit against the maker of a negotiable note, who has been attached by garnishment in another jurisdiction, the federal court will not grant the application, if it appear that the attachment in the state court is for the debt of the payee, and by his creditors, who claim that the note belongs to him, while the plaintiff in the federal court is a citizen of another state, a holder by indorsements, and not a party to the state suit, except by publication, no process or attachment being served upon him particularly if the non-resident holder has been attempted to be made a party to the state suit by supplemental proceedings taken there *after* he had commenced his suit in the federal court.

**2. SAME—NON-RESIDENT DEFENDANT—PUBLICATION IN STATE COURT.**

The federal court will not, under the circumstances of this case, by staying his suit, force a plaintiff in that court to unwillingly appear in a suit in the state court, where the only process against him is by publication, and there has been no attachment of his property, and the object of the decree is purely personal, as against him.

**3. SAME—FRAUDULENT CONVEYANCE.**

The garnishment of the maker of a negotiable note, at the suit of creditors of the payee, because he has fraudulently conveyed his property, cannot give the state court jurisdiction to bring in the alleged fraudulent holder by publication only.

Application to Stay Proceedings.

Defendant has been sued in this court upon a negotiable promissory note of which he is the maker. The plaintiff claims title by successive indorsements from Solomon Solmson, the original payee. By his petition, the defendant states that before the bringing of this suit the creditors of Solomon Solmson, the payee, attached this debt due from him, along with other debts, by a bill in equity, to which Solmson and the petitioner (Wilson, the defendant in this suit) were parties defendant, brought in the state court, and that this defendant was, by preliminary injunction, enjoined from paying the note to Solmson "or any other person." The ground of the attachment was that Solmson had fraudulently disposed of his property. Both defendants answered. The bill was filed January 1, 1885. Afterwards, this suit having been brought, the said creditors of Solmson filed an amended bill on May 3, 1886, in the state chancery court, in which they allege that Solmson had fraudulently conveyed the notes to his two brothers-in-law, to hinder and delay his creditors, and that the brothers-in-law had fraudulently conveyed the one sued on in this suit to the plaintiff, Hauf, who had therefore no interest in it, the note being still the property of Solmson. The plaintiff's (Hauf's) attorneys in this court were also made defendants to the amended bill, and process was served upon them. The bill also alleged that the bringing of this suit was part of a fraudulent scheme of the parties concerned to defraud the creditors. The defendant Wilson was also made a party to this amended bill, and process was served on him. The brothers-in-law of Solmson and holders of the other notes, all living, like

the plaintiff, Hauf, in Arkansas, were made parties defendants by publication. The bill prayed to attach the note, and enjoin the plaintiff and his attorneys from collecting it. The plaintiff pleaded this suit in abatement, and his attorney filed a demurrer. It does not appear what has been done with the injunction against Hauf and his attorneys by the state court, upon their plea and demurrer, but this petition alleges that the original and amended bills are still pending in that court, and that the petitioner is in great danger and fear that he will have the note to pay twice, unless this court will, out of comity, stay its proceedings, by continuance or otherwise, until the state court has determined the litigation. And the defendant prays by this petition for that relief.

*M. M. Neil*, for petitioner.

*McCorry & Bond, contra.*

HAMMOND, J. It is not at all necessary, in the view taken by the court, to decide the interesting question so ably presented by the brief of petitioner's counsel, whether a court of law will, *ex comitate*, protect a garnishee in a foreign jurisdiction by staying the suit at law until the court of the foreign jurisdiction can decide the attachment suit, as was done in *Lynch* v. *Hartford Fire Ins. Co.*, 17 Fed. Rep. 627; nor whether this court and the state court are, in the sense of that case, foreign to each other, it being held in *Radford* v. *Folsom*, 14 Fed. Rep. 97, that they are not; nor to consider any of the difficulties suggested by the petition and argument as to the inconvenience and danger of defendants' situation; for, when the petition is analyzed, and the facts are properly understood, these questions do not arise, in my judgment. The petition and argument proceed upon the assumption that the state court first acquired jurisdiction of the subject-matter and of the parties, and that while it may be conceded that neither a plea in abatement of a former suit pending, nor an injunction from the equity side of this court against the plaintiff's suit at law, would avail petitioner, the comity of courts would induce this court to continue the case here until the other court had finished its work. There are many answers to this, but the chief one is that the assumption of fact on which the application proceeds is wholly unfounded. If the state court has at all acquired any jurisdiction over the parties and subject-matter of the suit pending in this court, it has done so since the suit here was commenced, and only by the amended bill filed there for the purpose of ousting the jurisdiction of this court.

And here it may be said that this application for the exercise of our *comity* comes with an ill grace from those who have filed a bill elsewhere to oust our jurisdiction, and place the party and his attorney here under an injunction that may be void, if not a contempt of this court. If the injunction be valid, the comity is not needed, and the petitioner has all he wants. If it be invalid, he ought to be willing to stand by it, at least until it is dissolved, before he applies to our comity for relief. I take it that Wilson, the petitioner, is working hand in hand with the creditors of Solmson; since I see that he is urging their case with the most

complete familiarity with all its details, that he files his answers there, his pleas and petitions here, and neither here nor there offers to pay in the money to one or the other court, and be done with it so far as he is concerned. His proceedings seem to contemplate all the delay he can get out of the situation, and that is greatest, perhaps, in the state court. If his proceedings were defensive, and not dilatory, he would tender the money to one court or the other, either of which would, no doubt, take it; and by comity or otherwise dispose of it properly, so as to avert his imaginary danger, for it is only imaginary.

The original bill that was filed was a general attachment bill against Solmson, alleging that he had fraudulently disposed of his property, and that the debt supposed to be due to him from Wilson, the defendant and petitioner here, was attached to secure the creditors in whatever judgment they might recover on their claims against Solmson. If any fraudulent disposition he had made of this note sued on here, or others like it, were involved in the attachment suit, it was only evidentially involved, like the fraudulent disposition of a stock of goods or parcel of real estate would have been, since any fraudulent transfer of his property would have supported the allegations of the bill. It was a mere matter of evidence, and nothing more. The subject-matter of that bill, therefore, was whether Solmson had made any fraudulent disposition of his property,—no more about a fraudulent transfer of these notes than any other fraudulent transaction that could be fished out and proved by overhauling his affairs. He and his creditors were the only parties to it; Wilson, the defendant here, being only a garnishee and an outside party altogether. If he did not owe Solmson, he was in no danger whatever, and his answer would conclude that fact. If he had made a negotiable note which was capable of being transferred to innocent third parties, that fact, being set up as an answer, was a good defense to the garnishment. He could have said that he owed the holder, and did not know who that holder was, and there could be no judgment against him, and he could not be compelled to pay without the production of the note. That was the commercial law, and the state court, as any other, would protect him under it. It was no answer to this to say that Solmson had fraudulently transferred or indorsed the note. The maker had nothing to do with that; and, unless the holder were a party to the fraud, he could not be affected by it; and that was a complete answer to the garnishment, and fully protected the garnishee. That was the situation under the original bill. The plaintiff here was not a party to it, and the controversy whether he be a guilty or an innocent indorsee of the note was in no proper sense a part of the subject-matter of that bill. Hence the only subject-matter of the suit here in this court being his title to the note, and the right to sue on it, and the parties in the state court being wholly different, that court acquired no jurisdiction over the same parties, or the same subject-matter, as we have in charge here.

So, coming here, Wilson, the maker, being informed of the facts by the bill or otherwise, might probably have pleaded that the plaintiff had no title; that he was a holder without consideration, and that the note

did not belong to him; that his title to the note was a fraudulent one, averring the facts that made it so, or, in other words, that he was not the owner of it,—it being immaterial, so far as he was concerned, whether the real ownership was in Solmson or his creditors under the attachment. 1 Pars. Notes & B. 188, *et nota*, 255. It may be that since the alleged fraud was one that pertained to creditors, and was only voidable at their suit, it is not one which the maker could set up as against the alleged fraudulent indorsee, suing him here,—which is a point we need not now decide; nor whether the fact that he had been attached by the creditors would confer the right to make that defense, if otherwise he did not have that right. If he could do this, that would be a complete defense here, and the plaintiff would fail for want of title. Either here or there he would have, then, a complete defense, if the allegation of a fraudulent transfer be true. In the state court no judgment could go against him as garnishee, because the note was negotiable, and under the commercial law the maker is not liable to garnishment at the suit of the payee's creditors until the note itself is produced, and its ownership by them established. The court would discharge him immediately as garnishee, on such an answer, and not hold him in peril until the creditors could establish a title to the note. We are not informed whether he made that defense, but presumably he did, and he is therefore in no danger there. Here, in this court, no judgment could go against him unless plaintiff could show a good title under the commercial law. So far, then, from his being in danger of paying twice, he might escape in both suits; for, if the plaintiff here has no good title, this suit would fail, and he ought to have been discharged immediately in the state court on a proper garnishee's answer, and the honest holder would have to commence over again as to him. But he must needs mix himself up with other parties and with other subject-matters than those concerning himself alone, and takes upon himself the burden of their difficulties. Well may counsel say that none of the cases he cites is precisely like this. They have no application to a garnishee who can so completely defend himself.

In the case of *Insurance Co.* v. *Brune*, 96 U. S. 588, the debtor had actually paid the money into the attaching court, and yet the court refused him an injunction against suits in another court; and this although the plaintiff there was a party to the suit in the state court, and made the agreement to have the money paid in, and there were no favorable advantages under the commercial law in that case as in this to aid the debtor. That here the state court did not, by the original bill, acquire jurisdiction of the parties and subject-matter of this suit is too plain for argument. Neither did it "impound" the debt, nor attach it by the injunction, because the commercial law was a complete defense to the garnishee. The Code and laws of Tennessee afforded to him that defense in the state court, whatever may be his difficulties here. Thomp. & S. Code, § 3495; M. & V. Code, § 4236; 1 Meigs, Dig. (2d Ed.) 259, (2;) *Turner* v. *Armstrong*, 9 Yerg. 411; *Pickler* v. *Rainey*, 4 Heisk. 335, 341; *Matheny* v. *Hughes*, 10 Heisk. 401; Drake, Attachm. (6th Ed.) §§ 582–592; Daniel, Neg. Inst.

§ 800a; *County of Warren* v. *Marcy*, 97 U. S. 96, 106; *County of Cass* v. *Gillett;* 100 U. S. 585, 593.

A court of equity, just as much as a court of law, is bound by this rule of commercial law, and especially by this statute of Tennessee, when proceeding against the maker of a negotiable note, as a garnishee, whether it proceeds under its statutory power, in Tennessee, to entertain a purely legal demand, commenced by original attachment, as this original bill was, or by its general equitable powers, to vacate fraudulent conveyances. In either case, although the maker is not served with a writ of garnishment, as at law, but is formally made a party, and the restraint of a writ of garnishment at law assumes the form of an injunction in equity, the maker is technically nothing but a garnishee, and his attitude and defenses are just the same.   The injunction against his paying the note to Solmson could not affect his paying it to any other holder, not an agent or attorney for Solmson.   The injunction against his paying it " to any other person" is probably void as to any other person not a party to the bill, and not therefore bound by it.   At all events, while the maker might refuse to pay to any other holder, not a party to the bill, pending the injunction against voluntary payment, that injunction would be no defense to a suit by that holder, and probably a voluntary payment to such holder would be good under the commercial law, and no violation of the injunction; certainly, if he be a *bona fide* holder.   If he did not wish to take that risk, any suit between them in which the *bona fides* of his holding was challenged would be a protection, and the state court would receive the defense.   Negotiable notes, afloat upon the seas of commerce, are not so easily "impounded," as the argument assumes, by an attachment suit by the creditors of the payee using a garnishment or other injunction against the maker, as will plainly appear from the authorities already cited.

The amended bill, which is a specific charge of fraud against the plaintiff here, and seeks to set aside the indorsements to him as fraudulent as against the payee's creditors, for the first time carried the parties to this suit and its subject-matter into the state court.   The effort to tack that bill to the first, and claim priority of jurisdiction through the first, cannot avail, for the reasons already shown that the two are distinct.   As before remarked, this amended bill seeks to enjoin this suit, and whether effectual or ineffectual for that purpose, the parties to it are not in a condition to ask a stay here on the score of mere *comity*, while that injunction remains.

. But, aside from that, it was decided long ago, in *Wallace* v. *McConnell*, 13 Pet. 136, 151, that proceedings by attachment, even if against Hauf, taken *after* suit commenced in this court, cannot oust or arrest proceedings here; and certainly attachment against a remote indorser would not; and therefore if comity be due, it is from that court to this, since we first acquired jurisdiction of *these* parties and *this* subject-matter, namely, Hauf, as holder and plaintiff, and Wilson, as maker and defendant, and the title of Hauf to the note.   We have no concern with Solmson or his creditors, or any claim they have to the note, whether by attachment or other-

wise, for that is a matter wholly outside this suit. The maker may be put to the necessity of showing that Hauf has not title; but that is a necessity that every maker is under, if he be notified in time of the defect of title. How far he may be compelled to make the defense, how far he may refuse to make it, and rely on the simple presentation of the note and a judgment upon it for his security in paying it, and how far Solmson's creditors would be bound by any judgment against the maker in favor of a fraudulent holder, where the maker, knowing the defense, did not or could not make it, are questions we need not now notice at all, for obvious reasons. But if the maker does all that the law requires of him in that behalf, and acts properly under the circumstances of his knowledge, and still judgment goes against him here, that it would be a complete defense in the state court, there can be no doubt; and, since we first acquired jurisdiction, if to protect the maker against two payments either court should wait, under Judge LOWELL's decision in *Lynch* v. *Hartford Ins. Co.*, *supra*, it is the state court that should do so.

Moreover, under the decision in the great case of *Pennoyer* v. *Neff*, 95 U. S. 714, and the many which have followed its lead, it is an enormous exaggeration of the power of the state of Tennessee to suppose that, *by publication*, it can acquire jurisdiction over a citizen of the state of Arkansas to enjoin him, either in the state or federal courts of Tennessee, from collecting a note which it is alleged he holds fraudulently. Hauf is not compelled to submit that controversy to any court in Tennessee, state or federal, or to its laws upon that subject, unless he be found within its jurisdiction, and process be served upon him. The fact that the maker of the note resides here cannot affect the principle, nor that his alleged fraudulent vendor resides here. He is not here, nor the note. The residence of the maker or debtor may and does, for some purposes, like that of administration, for instance, fix the *situs* of the debt, but for most purposes it is where the creditor resides. *Kirtland* v. *Hotchkiss*, 100 U. S. 491. *Nevada Bank* v. *Sedgwick*, 104 U. S. 111, 112; *Wyman* v. *Halstead*, 109 U. S. 654, 3 Sup. Ct. Rep. 417; *Taylor* v. *Life Ass'n*, 13 Fed. Rep. 493, 496. If Hauf's creditors were seeking to attach *him*, perhaps the *situs* of the debt might be in Tennessee, because the maker resides here, and, the debtor being in Tennessee, that state would, through its attachment laws, have power to subject the debt to Hauf's creditors. But that is not this case. It is another man's creditors seeking to subject the note to attachment, not Hauf's. They have a controversy, not with Hauf's debtor at all, but with Hauf himself, as to his title to the note, and why should they not be required to go to the state of Arkansas, where Hauf resides, to sue him as to that, and how can they sue him as to it in Tennessee by publication only? But it is said Solmson resides here; that he is the man whom they also wish to sue; and that they claim that the note belongs to him. This may necessitate two suits,—one in Arkansas, where the holder and the note are, and the other where the fraudulent vendor or maker resides; but it does not enlarge the jurisdiction of the state of Tennessee over a citizen of the state of Arkansas to obtain a personal decree, denouncing him for an alleged fraud, and

enjoining him from taking advantage of it, and this by publication only. He must be either served with process, or his property attached to give the necessary jurisdiction. The attachment of *Solmson's* property cannot give jurisdiction *in rem* or *in personam* over Hauf or his property. Where, then, does the state of Tennessee get the jurisdiction over him by that bill through *publication* only? The holder of the property who has the legal title is the main defendant in such a case. It is against him the decree is wanted, and he cannot be forced from his jurisdiction because other parties may reside elsewhere. Mere avoidance of multiplicity of suits cannot supply the jurisdiction. It is one of the inconveniences of living as a family of independent states that have close commercial relations that parties may have to bring two or more suits where one would do, if there were only one state or nation for the two territories. Along with the blessings, we must take the inconveniences

The attempt to get service on Hauf, by serving his attorneys in a suit *in another jurisdiction*, that of the United States, namely, cannot bring Hauf into the state court. How far he may have submitted to that jurisdiction by his plea in abatement we cannot tell from the allegations of this petition, but, unless that has brought him there, the publication has not, and these cases in the supreme court of the United States hold, all of them, that it is the duty of the federal judicatories to protect the non-resident in this privilege he has of being sued only by personal process, and to limit the jurisdiction of the state courts to the property seized in the state by proper process, and to give no effect to the claim to bind them *personally* beyond that. Hauf not being served with process, and no property of his being seized, it conclusively appears that the allegation of this petition is not true that *all* the parties to this controversy are in the state court, which has jurisdiction of the subject-matter, and can best settle it, and that it first acquired that jurisdiction. To stay this suit, as we are asked to do, would be to compel the plaintiff, a citizen of Arkansas, to submit unwillingly to the jurisdiction of a court in Tennessee, acquired by publication only, and to which otherwise he would not be compelled to submit himself. A court of the United States cannot, under the decisions referred to, at all do that.

Now, Hauf having *voluntarily* come into this court of the United States to bring his suit against the maker of the note, it was competent for Solmson's creditors, who claim that he is a fraudulent holder, and that the note belongs to them, to file their injunction bill in the equity court of the United States, and enjoin this suit at law, and serve the process on his attorneys here, and, if need be, make Solmson and the maker, Wilson, parties defendant to that suit. It would be, if not ancillary to the jurisdiction we have already in this suit, a jurisdiction over Hauf that would come of his voluntarily coming into our jurisdiction to sue upon a note not belonging to him; and, because no other power could enjoin the recovery, this must, at least, until they could prosecute their suits against Solmson and Hauf in Arkansas and Tennessee, respectively, if necessary to do that. *Christmas* v. *Russell*, 14 Wall. 78, 80; *Jones* v. *Andrews*, 10 Wall. 327, 333; *Dunlap* v. *Stetson*, 4 Mason, 349.

It was in that direction parties should have looked with their supplemental bill, if the conclusion was reached that they could not defend through the maker, at law, in this suit, instead of going to the state court, on the theory that an attachment of Solmson's property gave jurisdiction over Hauf, a non-resident of the state, and his property, if it be his. The idea that the seizure by attachment of a parcel of property gives the attaching court plenary jurisdiction over all controversies concerning it, regardless of parties, their residence and rights, is fallacious; particularly if it be a negotiable note, not in the actual possession of any party to the suit. *Logan* v. *Greenlaw*, 12 Fed. Rep. 10. Even seizures in the bankrupt court do not accomplish that result, as came to be well understood when the supreme court got hold of the question. *Eyster* v. *Gaff*, 91 U. S. 521, and other cases.

Application refused, at costs of petitioner.