INSURANCE COMPANY *v.* BRUNE'S ASSIGNEE.

1. The rule at law that the pendency of a former action between the same parties for the same cause is pleadable in abatement to a second action, provided the actions be in courts of the same State, holds in equity.

2. The plea of a former suit pending in equity for the same cause in a foreign jurisdiction will not abate an action at law in a domestic tribunal, or authorize an injunction against prosecuting such action.

APPEAL from the Circuit Court of the United States for the District of Maryland.

The facts are stated in the opinion of the court.

*Mr. Henry E. Davies* and *Mr. Edward O. Hinckley* for the appellant. *Mr. F. W. Brune* and *Mr. J. M. Harris, contra.*

MR. JUSTICE STRONG delivered the opinion of the court.

This was a bill by the Mutual Life Insurance Company of New York for an injunction upon Horatio L. Whitridge, assignee of William H. Brune, enjoining him against further prosecuting two actions at law which he had commenced in the Circuit Court of the United States for the District of Maryland, against the complainant, upon two policies of insurance issued by it, in the name of William H. Brune, the 18th of January, 1872, on the life of John S. Barry; one for $20,000, and the other for $5,000.

The material averments of the bill are the following: —

1. That the complainant, a New York corporation, on the 11th of January, 1867, issued a policy of life insurance to Rosalie C. Barry, wife of John S. Barry, for $20,000, on the life of her husband; and on the 9th of December, 1870, issued to her a second policy, on the same life, insuring $5,000.

2. That the premiums were regularly paid until December, 1871, and January, 1872.

3. That about the latter part of December, 1871, and the beginning of January, 1872, an agreement was made between Mrs. Barry, Mr. Barry, and Mr. Brune, for the assignment or transfer of the policies to the latter, and that in pursuance of the agreement, and in accordance with a mode of proceeding before used by the complainant in cases of insurance on the lives

of married women, the policies were permitted, with the consent of all parties interested, except the complainant, to lapse, — that is to say, to become forfeited, — with the intent, however, to have the same renewed or reissued in Brune's name.

4. That, as evidence of such intention, Brune (as whose assignee Whitridge, the defendant, claimed) united with John S. Barry in signing a paper called "a declaration to be made and signed in case of issuing new policy after lapse," dated Dec. 16, 1871, referring to and adopting the original application made by Mrs. Barry for insurance, dated Dec. 9, 1870, and signed by her; that he also united with Mr. Barry in signing another paper, dated Jan. 12, 1872, adopting Mrs. Barry's original application for insurance, dated Jan. 11, 1867.

5. That Mr. Barry did not undergo a new medical examination; that no other applications were made for the two insurances (upon which the suits were brought) than those made by Mrs. Barry in 1867 and 1870, and so, as aforesaid, adopted by Mr. Brune; and that thereupon the two policies issued to Mrs. Barry were surrendered and cancelled.

6. That, at the time when the original policies issued to Mr. Barry were cancelled, two others for the same amount, on the life of the said John S. Barry, were substituted therefor: that they were issued to William H. Brune with like premiums and having the same numbers as those of the cancelled policies; differing only in the fact that the premiums were made payable semi-annually, instead of annually as theretofore, and that Brune paid up the premiums that had before fallen due and that remained unpaid.

7. That in February, 1872, Brune assigned these policies to Whitridge (Harris being now substituted as Brune's assignee or trustee in place of Whitridge).

8. That John S. Barry died in March, 1872.

9. That shortly after, or about April 4, 1872, Mrs. Barry filed, in the Supreme Court for the city and county of New York, her bill of complaint against the complainant in this bill, and against both Brune and Whitridge, in which she alleged substantially what is hereinbefore set forth, and also complained that the novation of the policies, or the lapsing and reissue as aforesaid, was without her consent; that it was done

after her signing some paper by reason of certain persuasions of her husband when he was embarrassed in business and disturbed in mind; that she did not act voluntarily and freely; that Brune acquired no rights under the said new policies, nor did Whitridge by the assignment to him; and she prayed the company might be enjoined against paying to Whitridge the amounts due thereon.

The bill and proceedings in the New York case were filed, and made a part of the present complainant's bill.

10. That, as appeared in those proceedings, pursuant to an agreement of the parties and an order of the court, this complainant, the insurance company, deposited the sums named in the two policies in a trust company, to the credit of the case; and the court ordered that the complainant should be discharged, and that the action should be discontinued as to it.

11. That, notwithstanding the agreement and order and the payment, Whitridge, the defendant, had afterwards, in September, 1872, brought two suits on the two new policies in the Circuit Court of the United States for the District of Maryland, the same suits the prosecution of which the complainant sought by this bill to have enjoined.

12. That the prosecution of these suits, if successful, would result in compelling the complainant to pay the same policies twice, and might give to Whitridge double payment.

Most of the material averments of this bill were admitted by the answer. It averred, in addition, that the original policies were assigned to Brune as collateral securities for loans Brune had made to Mr. Barry, and that the permitted lapse and the issue of the new policies were intended only to make the assignment effective. It denied, however, that the new policies we e in substitution for the policies surrendered, and asserted that they were separate and new contracts. It admitted the execution of the agreement or stipulation in the New York case; but alleged that it was without Brune's knowledge or consent, and alleged also that it was not intended to surrender or affect in any way the right of the defendant under the two policies issued to Brune and assigned to him.

Such was the case when it came on for hearing; the parties having agreed that Mrs. Barry's bill of complaint might be

read, as also the answers of Brune and Whitridge thereto, the stipulation made in the case, the order of the court that the company pay the amount of the policies, less the costs, into court, a subsequent order abrogating the former and the stipulation, together with a pending appeal therefrom.

Upon this showing, the Circuit Court refused the injunction asked for, and dismissed the complainant's bill. We agree with the counsel for the appellee, that whether the Circuit Court erred or not must be determined in view of the facts as they appeared when the decision was made. But we do not admit, as it is argued, that Mrs. Barry in her bill claimed only what was assured to her by the original policies. She claimed a decree against the insurers, that they should pay to her. She asserted that the original policies had been surrendered and cancelled, and she claimed that Brune and Whitridge were asserting rights adverse to hers. She charged in effect that the assignments of those policies she had made had been obtained from her by duress, through misrepresentation, and without any present consideration. The surrender and reissue to Brune concerted between him and Mr. Barry, the payment of the premium of the substituted policies with Mrs. Barry's dividends and money, the identity of the numbers of the new policies with those of the old, and the fact that the stipulated premiums were the same, adjusted according to the age of Mr. Barry when the first policies were granted, and paid from the times when under those policies they were due, — were set forth as proofs that the substituted ones were only continuations of the first insurance, and that in equity they were her property. Neither Brune's nor Whitridge's answer, both of which were in evidence, effectually controverted this. Brune's substantially admitted it. In his answer, he everywhere speaks of himself as the assignee of the original policies, asserts Mrs. Barry's assignments as the foundation of his right, alleges that the polices were suffered to lapse and were surrendered, that they might be renewed and continued for his benefit; and alleges expressly that "the two policies issued in January, 1872, constituted the only claim on the said Mutual Life Insurance Company, on account of insurance on the life of the said Barry, and that the plaintiff has no claim whatsoever to the

said policies, or either of them, or to the sums secured thereby, until the indebtedness of the said Barry and of his firm, to secure which the said policies were assigned as aforesaid, shall have been fully paid and satisfied." Thus the answer implies a clear admission, that in equity Mrs. Barry is the owner of the new policies, subject only to Brune's right (whatever it may be) to hold them as a collateral security.

The case in the New York Supreme Court, therefore, involved the same controversy as that exhibited in the two Maryland suits; and the complainant here and Whitridge are parties in each. Alike in the bill and in the action at law, it is a vital question whether the insurers are liable for the sums insured by the policies of January, 1872, and whether they are liable to Whitridge as assignee of Brune. Hence, if there were a final decree in the New York case against the complainant here, the present appellee would necessarily fail in the action he has brought in Maryland. That decree would be pleadable in bar to his suits, and the complainant would have complete protection at law.

But the difficulty in the appellant's way is, that, when this case was heard in the court below, the record of the New York case exhibited no final decree. The order that the amount of the policies might be paid into the trust company to the credit of the case, and that the company should be discharged, had been set aside; and the money paid under the order had been directed to be returned. All that appeared, then, was that a bill in equity was pending in a foreign jurisdiction, when the appellee's suits at law were brought to enforce the payment of the policies to Mrs. Barry, rather than to Brune or his assignee, and that both the present complainant and the present defendant were parties to that bill.

This, we think, was not sufficient to justify the injunction for which the appellant prayed. At law, the pendency of a former action between the same parties for the same cause is pleadable in abatement to a second action, because the latter is regarded as vexatious. But the former action must be in a domestic court; that is, in a court of the State in which the second action has been brought. *Maule* v. *Murray*, 7 T. R. 470; *Buckner* v. *Finley*, 2 Pet. 586; *Browne & Seymour* v. *Joy*, 9 Johns. (N. Y.) 221; *Smith et al.* v. *Lathrop et al.*, 44 Pa. St. 326.

The rule in equity is analogous to the rule at law. Story, Eq. Pl., sect. 741. In *Foster* v. *Vassall* (3 Atk. 587), Lord Hardwicke said: "The general rule of courts of equity with regard to pleas is the same as in courts of law, but exercised with a more liberal discretion." In *Lord Dillon* v. *Alvares* (4 Ves. 357), a plea of a pending suit in a court of chancery in Ireland was overruled in the English Court of Chancery. Certain it is that the plea of a suit pending in equity in a foreign jurisdiction will not abate a suit at law in a domestic tribunal. This was shown in a very able decision made by the Supreme Court of Connecticut, in *Hatch* v. *Spofford* (22 Conn. 485), where the authorities are learnedly and logically reviewed. See also 7 Metc. (Mass.) 570, and 16 Vt. 234.

If, then, a bill in equity pending in a foreign jurisdiction has no effect upon an action at law for the same cause in a domestic forum, even when pleaded in abatement; if, still more, it has no effect when pleaded to another bill in equity, as the authorities show, — it is impossible to see how it can be a basis for an injunction against prosecuting a suit at law. It follows that the refusal of an injunction by the Circuit Court was not erroneous.

It is contended, however, that if the appellant was not entitled to the injunction asked for, the bill should not have been dismissed, but that it should have been retained, until the final disposition of the case in New York. The Supreme Court in that State having first obtained possession of the subject-matter of the controversy, as well as jurisdiction of the parties, it is argued, had a right to proceed to a final determination. In view of this fact, we concede the Circuit Court might have retained this bill. It does not appear, however, that such a retention was asked. Nor was it necessary for the purposes of justice. As we have already remarked, if a final decree be made by the Supreme Court, it will, if pleaded, be a bar in the Maryland courts; and if a judgment be rendered in the latter, the New York court, having jurisdiction of the parties, will be able to determine to whom in equity the judgment belongs.

*Decree affirmed.*