### ARKANSAS SOUTHEASTERN R. CO. v. UNION SAWMILL CO.

(Circuit Court of Appeals, Fifth Circuit. May 30, 1907.)

No. 1,625.

1. EQUITY—PARTIES—PERSONS WHOSE INTERESTS ARE DIRECTLY AFFECTED.

It is the aim of a court of equity to do complete justice by deciding upon and settling the rights of all persons directly interested in the subject of the suit, and to accomplish this end all persons materially interested in the subject ought generally to be parties to the suit.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, §§ 246–250.]

2. SAME—INDISPENSABLE PARTIES.

A suit in equity against a corporation organized to build and operate a logging road for the sole purpose of carrying logs to the mill of a lumber company, and without which it could not operate its mill, to enjoin the construction of such road, the right to relief being based largely upon contracts between complainant and the lumber company and complainant and defendant, which were parts of the same transaction, is one in which the lumber company is directly and vitally interested and to which it is an indispensable party.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, §§ 252–259.]

3. APPEAL—DISPOSITION OF CAUSE—APPEAL FROM INTERLOCUTORY ORDER.

Although an appeal is from an interlocutory order granting or continuing in force an injunction, if the appellate court is of opinion that relief cannot be granted and that on the final hearing the bill must be dismissed, it is its duty to save both parties the expense of further litigation by making a final disposition of the case.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 3533.]

Appeal from the Circuit Court of the United States for the Western District of Louisiana.

This is a suit in equity brought by the Union Sawmill Company, an Arkansas corporation, against the Arkansas Southeastern Railroad Company, a Louisiana corporation. On the 16th of August, 1906, the Union Sawmill Company filed its petition in the Fourth judicial district court of the state of Louisiana against the Summit Lumber Company and the Arkansas Southeastern Railroad Company. The petition contained substantially the same averments and prayers contained in the bill in this case, which will be fully stated later. The only material difference in the suits is that in the state court the Summit Lumber Company is made a codefendant with the Arkansas Southeastern Railroad Company. The petition was presented to Hon. Robert B. Dawkins, judge of said state court, who granted the injunction prayed for. Later, on motion of the defendants in that suit, Judge Dawkins dissolved the injunction. The Union Sawmill Company, complainant in that suit, applied to Judge Dawkins for a suspensive appeal to the Supreme Court of Louisiana, which was refused. The Union Sawmill Company then made application to the Supreme Court of Louisiana for a mandamus to require Judge Dawkins to grant the

suspensive appeal. The application for mandamus was, on October 1, 1906, denied by Mr. Justice Monroe of the Louisiana Supreme Court, without the assignment of reasons. The Union Sawmill Company then applied to the Supreme Court for a rehearing. The application for a rehearing was denied, Mr. Justice Provosty delivering the opinion of the Louisiana Supreme Court. In re Union Sawmill Company, 117 La. 643, 42 South. 195. The case was dismissed from the Fourth judicial district court of Louisiana on December 3, 1906.

While the foregoing petition was pending in the state court, the Union Sawmill Company filed its bill in the United States Circuit Court for the Western District of Louisiana. In this suit the only defendant is the Arkansas Southeastern Railroad Company. The Summit Lumber Company, a corporation organized under the laws of Arkansas, is not made a party to this suit. It could not be made a party without defeating the jurisdiction of the Circuit Court, because it and the plaintiff corporation were both organized under the laws of the same state.

The following are the material averments of the bill:

"Your orator complains and says that it has its place of business in the county of Union and state of Arkansas, and that it owns and operates at the town of Huttig, in the said county, a large and valuable plant for the manufacture of lumber, and that it also owns valuable tracts of timber land in the county of Union, state of Arkansas, and also in the parish of Union, state of Louisiana, aggregating more than sixty thousand acres, of which it is the owner in fee simple, and that it is the owner of more than one hundred and eighty thousand acres, of which it is also in actual possession, but of which it owns only the timber rights, with limited time in which to cut and remove the same, and that the value of the said holdings in the parish of Union, in the state of Louisiana, alone aggregates more than nine hundred thousand dollars.

"And your orator further shows that the Arkansas Southeastern Railroad Company was organized on the face of its charter for the purpose of constructing a line of railroad from the village of Randolph, in the said parish of Union, in a southeasterly direction through the said parish, thence to the city of Monroe, in the parish of Ouachita, thence further to the Mississippi river; that the said Arkansas Southeastern Railroad Company has constructed, and is engaged in the construction of, a road along the line hereinbefore indicated, and across and beyond the west bank of the Little Loutre, in Union parish, Louisiana, but it avers that the said road, so far as constructed, is not permanent and substantial in its character, and was, and is being constructed, only for temporary use as a logging or turn road for the conveyance of timber to the mill of the said Summit Lumber Company, which is the northern terminus and point of origin of the said Arkansas Southeastern Railroad Company; that among and in addition to other large and valuable holdings of land in the parish of Union, in the state of Louisiana, your orator is and was, in March last, the owner and actual possessor, in good faith, of the following described real estate, to wit: [We omit description of land.]

"And that the said Arkansas Southeastern Railroad Company did, during the months of February and March, 1906, through its officers, agents, and employés, enter upon and commit repeated acts of trespass upon the same, by cutting and felling trees, constructing embankments for its logging road or railroad, and by running locomotive and cars over and across the said lands, all without any right or authority whatever from your orators, and in utter disregard of its repeated warnings and protests, and that the said defendant company, its agents, officers, and employés, continued to commit the aforesaid acts of trespass until restrained by an order of this honorable court rendered on or about March 15, 1906, at the instance of your orator, in the suit entitled, 'Union Saw Mill Company versus Arkansas Southeastern Railroad Company, Defendant, et al.'

"That the said defendant railroad company, through its agents, officers, and employés, did also, and about the same time, during the months of February and March, 1906, illegally and tortiously enter upon and take possession of a part of your orator's land in sections 27 and 34, township 23 north, range 1

154 F.—20

west, in the said parish of Union, state of Louisiana, and would have so continued illegally and tortiously in its possession, and of other valuable holdings of your orator, but for the granting of the aforesaid restraining order of this honorable court on or about March 15, 1906; that at the time of the commission of the aforesaid illegal and tortious acts by the said Arkansas Southeastern Railroad Company on its property in Union parish, Louisiana, during the months of February and March last, the said defendant railroad company had instituted two actions in the Fourth district court for the parish of Union, state of Louisiana, for the purpose of expropriating portions of the aforesaid described land for a right of way, and that said actions were then, and on March 21, 1906, still pending and undecided, as well as the suit filed by your orator in this honorable court, and in which the restraining order hereinbefore referred to was granted, together with several suits instituted by your orator against the Summit Lumber Company and which were also pending in the Fourth district court.

"That it entered into a written contract, on or about March 21, 1906, with the Summit Lumber Company, whereby the differences involved in litigation and then pending in the county of Union, state of Arkansas, and in Union parish, Louisiana, and also in the federal court for the Western District of Louisiana, between the Summit Lumber Company and the Arkansas Southeastern Railroad Company and your orator, over conflicting rights and titles to lands and timber and rights of way, situated and located on said lands in said parish of Union and county of Union, should be settled and terminated by the dismissal of the suits then pending, and by the sale under full warranty of titles to your orator of all the lands and timber owned by the said Summit Lumber Company, its officers or stockholders—that is, of the merchantable pine timber ten inches in diameter and over at the stump, then owned or under contract by the said Summit Lumber Company, its officers or stockholders—and all rights of way, in the parish of Union in Louisiana, and the county of Union in Arkansas, the territory in Union parish, Louisiana, being described as follows: [Description omitted.]

"That your orator agreed and obligated itself to pay to the Summit Lumber Company the sum of three ($3) dollars per thousand feet, that is, for all merchantable pine timber ten inches and over in diameter at the stump, standing and growing on said lands according to the estimates (for which provision is made in said contract), and with the understanding that no timber contracted for, with the right to cut and remove, expiring in less than five years from the date of conveyance to your orator, excepting the timber on sixteen hundred and seventy-seven acres, known as the 'Andrews Tract,' in sections five, six, seven and eight, of township twenty-two, range one east, and section one township twenty-two, range one west and such other tracts of timber as the Summit Lumber Company shall or might have the time for cutting and removing prolonged to the period of time mentioned, and by or before June 30 1906, the time agreed on for conveying and settling under said contract, and at which price per thousand feet the said Summit Lumber Company obligated and bound itself to convey, sell, and deliver all of its lands and timber in the parish of Union, Louisiana, and the county of Union, Arkansas, excepting that within the aforesaid reserved territory, and as specified in contract, by full warranty deeds of June 30, 1906, and before which date your orator was to be furnished by the Summit Lumber Company with complete abstracts of title to all the lands and timber it proposed and agreed to convey under said contract, and the titles to which land and timber to be satisfactory to the attorney for your orator, otherwise the same should not be included in said conveyance.

"That, as a further inducement to your orator to make the aforesaid purchase of lands and timber at the price hereinbefore stipulated, it was agreed and stipulated that all the rights of way and privileges owned and enjoyed by the Summit Lumber Company and the Arkansas Southeastern Railroad Company on or over the lands whereon the timber is to be conveyed to your orator, and within the above-described territory, should also be conveyed to, and your orator fully subrogated to all the rights and privileges of the said lumber company and the said railroad company, and which said rail and

logging road, it was also further stipulated and agreed, should not be constructed nor extended further than the west bank of the Little Loutre, and should only remain for a sufficient length of time for the removal of the timber between said creeks, and, in any event, not longer than twelve months, when said logging railroad, tramroad, should be torn up and removed back to Big Loutre, and not to build or cause to be built another rail, logging, or tram road within said territory for the period of five years from the date of said contract, being March 21, 1906, and which agreement and obligation was fully and legally ratified and confirmed by the said Arkansas Southeastern Railroad Company.

"That it was also agreed and covenanted by and between the Summit Lumber Company and your orator that, as part payment of the purchase price for the lands and timber and rights of way to be conveyed to it by the former, and the Arkansas Southeastern Railroad Company, all of the merchantable pine timber measuring ten inches in diameter and above at the stump, standing and growing on the McCormick, Harrison, and Futch tracts, and within the territory reserved by the Summit Lumber Company, said timber amounting to more than one million and five hundred thousand (1,500,000) feet, and owned by your orator, should be conveyed to the said Summit Lumber Company at the price of three dollars ($3) per thousand feet, and the amount thereof credited against the final sum or amount to be paid under said contract by the Union Sawmill Company for the timber and rights of way aforesaid, and with the understanding that the said timber should be cut within six months from date of said contract, and which timber on said above-mentioned tracts has been hauled by the Arkansas Southeastern Railroad Company, and manufactured by the Summit Lumber Company under the contract, notwithstanding defendant's failure and refusal to perform the obligations it assumed and undertook thereunder.

"That upon the signing and execution of the aforesaid contract a copy thereof, together with a certified check drawn by your orator for the sum of fifty thousand ($50,000) dollars, was deposited with the Fourth National Bank of St. Louis, Missouri, to be held by the said bank, subject to the final completion and carrying out of the contract, when same should be paid to the Summit Lumber Company as part of the purchase price of the lands and timber and rights of way to be conveyed, as hereinabove set forth; and that your orator has in every particular fully performed its part of said contract so far as the same has been possible, and has made repeated demands upon the Summit Lumber Company and the Arkansas Southeastern Railroad Company to carry out and perform their obligations thereunder, but without avail; that said Summit Lumber Company caused abstracts to about one-half of the lands and timber situated in Union parish, and in the aforesaid territory, to be furnished to your orator and its attorney within the time provided, but for some unknown reason has failed and refused to furnish abstracts for the balance of said lands and timber covered by said contract, and that your orator is now having the titles to the remainder of the lands, timber, and rights of way belonging to the Summit Lumber Company and this defendant abstracted, and expects to have the same completed within the next thirty days, for the purpose of ascertaining the exact quantity thereof, in order that a legal tender of the balance of the purchase price, after crediting the price of the timber received by the Summit Lumber Company from your orator in part payment, may be made to the Summit Lumber Company in the manner prescribed by law, and a suit for the specific performance of said contract instituted against said defendant by your orator, and all of which it is impossible to do without first having said abstracts.

"That all of the timber embraced in said contract having been estimated in the manner therein provided, and the contract partially performed, your orator, acting and relying upon the good faith of the Arkansas Southeastern Railroad Company to carry out their contract, added another large sawmill to its manufacturing plant, at a cost largely exceeding one hundred thousand dollars, and which otherwise would not have been done, especially at this time, and, in addition, caused the dismissal of all suits pending by it against the Arkansas Southeastern Railroad Company and the Summit Lumber Company,

and now it is desirous of and entitled to a specific performance of the said contract by this defendant.

"That the said railroad company, through its officers, agents, and employés, has illegally and tortiously entered upon and taken possession of a part of the rights of way on the east side of the Little Loutre in Union parish, Louisiana, and which your orator, under said contract, is the equitable owner and possessor, and that it has constructed thereon a railroad, logging or tram road, a distance of about one-fourth of a mile, and that unless restrained that said company will continue the construction of the said railroad, logging or tram road, and will run locomotives and cars over the same for the purpose of transporting timber to the Summit Lumber Company, and over and through valuable property and timber lands owned and possessed by your orator. [Here we omit allegations as to the value of the property involved in the suit, which is shown to greatly exceed $2,000.]

"That said defendant is not entitled to exercise under the laws of the state of Louisiana the right of eminent domain, because not designed as a public carrier, and that your orator's property, over which said railroad, logging or tram road has been permitted to be constructed, in consequence of the contract entered into by this defendant with your orator, could not have been taken, and the said railroad, logging or tram road would not have been permitted to be constructed thereon, but for the entering into of the aforesaid contract, and the obligation expressed and undertaken by this defendant 'to tear up and remove, or cause to be torn up and removed, all its railroad lying and situate between the west side of the Little Loutre to the east side of the Big Loutre creek, in the parish of Union, Louisiana, within the period of twelve months from March 21, 1906 (being the date of the contract between Summit Lumber Company and your orator), or as much earlier as the Summit Lumber Company can cut and this defendant convey all the timber the former company owns within the last mentioned and described territory,' and that this defendant 'would not, nor any one by its procurement, either directly or indirectly, build any railroad or tramroad into the territory above mentioned and described,' and in which territory your orator purchased the pine timber and the rights of way enjoyed and belonging to the Summit Lumber Company and to the Arkansas Southeastern Railroad Company, within a period of five years from the 21st day of March, 1906.

"Wherefore, the premises considered, your orator prays that a writ of injunction may issue to the Arkansas Southeastern Railroad Company, its officers, agents, and employés, perpetually enjoining it and them from entering upon and committing further acts of trespass, such as cutting and felling of trees, constructing embankments for railroads, logging roads, or tramroads, running locomotives or cars, or from in any manner going beyond, with either its railroad, logging or tram road, the west bank of the Little Loutre creek, in Union parish, Louisiana, or from going upon any of the lands of your orator east of the Little Loutre and outside of or beyond the territory specially reserved by the defendant company in the contract hereinabove referred to and made a part thereof, and from in any manner disturbing your orator's possession and enjoyment of the rights of way east of the Little Loutre, outside of or beyond the aforesaid described and specially reserved territory to the defendant company; and that, if it should be held by this honorable court that the defendant company has unlawfully and tortiously entered upon and taken possession of any part of your orator's property as set forth in this bill, and particularly beyond the west bank of the Little Loutre creek, in Union parish, Louisiana, that said defendant company be ordered to vacate the same, and to remove any construction or obstructions illegally placed thereon; that a writ of subpœna may issue to the said Arkansas Southeastern Railroad Company requiring it to answer, not under oath, this bill of complaint and the various matters therein set forth, and that, forasmuch as the matter is urgent and does not admit of a notice of a motion for a preliminary injunction, a temporary restraining order may issue, enjoining the said defendant company, its officers, agents, and employés, from further trespassing upon your orator's property, or from constructing any embankment, railroads, or logging roads or tramroads, or from running its locomotives or cars beyond the west bank of the

Little Loutre creek, as specifically set forth herein, until the final hearing of this cause, or until such time as to your honors may seem meet.

"Your orator prays for such other and further orders and general relief as may seem proper in the premises."

It will be observed that the bill contains no reference to the suit in the state court. In the state court, Judge Dawkins dissolved the injunction on August 20, 1906, which he had theretofore granted. On September 8, 1906, 19 days after the state judge had dissolved the injunction in the state court case, the bill in this case was presented to one of the judges in the court below, who granted a temporary restraining order and set the application for injunction for hearing on the first Monday in October, 1906. The case came on to be further heard on November 3, 1906, on the application for injunction, and it was ordered by one of the judges of the Circuit Court that the injunction theretofore awarded "be continued until the hearing of this cause." The defendant, the Arkansas Southeastern Railroad Company, appealed from this interlocutory order. Act June 6, 1900, c. 803, 31 Stat. 660 [U. S. Comp. St. 1901, p. 551]. It is assigned, with many specifications of error, that the court below erred in continuing the injunction and in not dissolving it and dismissing the bill.

Two of the assignments of error are as follows:

(1) "It is manifest, from an inspection of defendant's plea and the exhibits thereto attached and made a part thereof, the authenticity and correctness of which are in nowise challenged, that the complainant, on the 16th day of August, 1906, voluntarily invoked the jurisdiction of the district court of the Fourth judicial district of the state of Louisiana, by filing its petition therein against the defendant and the Summit Lumber Company, praying for an injunction upon the identical grounds attempted to be presented by the complainant's bill herein; and that thereby said district court of said Fourth judicial district of the state of Louisiana had, prior to the 11th day of September, 1906, the date of the filing of the complainant's bill herein, acquired exclusive jurisdiction over the parties to and the subject-matter of the controversy attempted to be presented by the bill herein, and the court erred in awarding an injunction and in not dismissing said bill."

(2) "It is manifest, from an inspection of complainant's bill, that Summit Lumber Company is a necessary party, and that in its absence no final decree can be entered adjudicating the respective rights of the parties litigant, and the court erred in awarding a writ of injunction, in the absence of having said Summit Lumber Company a party to said cause."

Stubbs, Russell & Theus, J. W. Elder, and W. Hall Trigg (F. M. Etheridge, of counsel), for appellant.

E. H. Farrar and Lamkin, Millsaps & Dawkins, for appellee.

Before McCORMICK and SHELBY, Circuit Judges, and SAUNDERS, District Judge.

SHELBY, Circuit Judge, having made the foregoing statement of the case, delivered the opinion of the court.

The learned counsel for the appellant cites many authorities bearing on the question raised by the first assignment of error, but we have concluded that it is only necessary to consider and decide the question involved in the second assignment, which we have quoted in the statement.

The complainant—appellee in this court—the Union Sawmill Company, is an Arkansas corporation, owning large tracts of timber land in Union parish, La. The defendant—appellant in this court—the Arkansas Southeastern Railroad Company, is a Louisiana corporation, chartered to construct a railroad through Union parish, Louisiana. The beginning or northern terminus of the railroad was at the mill

of the Summit Lumber Company, a corporation organized under the laws of Arkansas, but having its principal place of business in Union parish, La. The railroad of the defendant was a logging road constructed and operated to serve the Summit Lumber Company. There was litigation between the complainant and the defendant and the Summit Lumber Company. This litigation was compromised or agreed to be settled by agreements between the three corporations. Two agreements were made, which are described in the bill. As they are described in the bill, which we have set out in the statement, the two agreements constitute one transaction by which the pending litigation between the three corporations was intended to be settled. This settlement was to be effected by the dismissal of the litigation between them, and by the purchase by the complainant of certain lands and timber and rights of way in which the defendant and the Summit Lumber Company were both interested. The bill avers performance on the part of the complainant, and alleges that it has "made repeated demands upon the Summit Lumber Company and the Arkansas Southeastern Railroad Company to carry out and perform their obligations thereunder, but without avail." It is alleged that the complainant has deposited its certified check for $50,000 with the Fourth National Bank of St. Louis, Mo., to be held by that bank and paid to the Summit Lumber Company as a part of the purchase price of the lands and timber and rights of way embraced in the contracts. It clearly appears that the Summit Lumber Company has a larger interest in the subject-matter of the contracts than the defendant railroad company.

The connection and interest of the Summit Lumber Company with the controversies between the complainant and the defendant is apparent in every material paragraph of the bill. It was interested in the suits dismissed, in the rights of way and property agreed to be sold; it is to receive the purchase money; the railroad, the construction and operation of which are sought to be enjoined, begins at its mill and is operated to convey timber to its mill, and it has no other means of being furnished with timber. It is expressly alleged in the bill that the railroad "is being constructed only for temporary use as a logging or turn (tram) road for the conveyance of timber to the mill of the said Summit Lumber Company, which is the northern terminus and point of origin of the said Arkansas Southeastern Railroad Company." Again it is alleged:

"That, unless restrained, the said company will continue the construction of the said railroad or logging or tram road, and will run locomotives and cars over the same for the purpose of transporting timber to the Summit Lumber Company."

One main purpose of the bill is to enjoin the railroad company from serving the Summit Lumber Company. If the Union Sawmill Company gets the relief prayed for, it would put the Summit Lumber Company out of business and close its mills. That was the aim of the suit in the state court, and is the chief purpose of the injunctive feature of the bill here. It is clear to us that a decree affecting the rights of the Summit Lumber Company so vitally ought not to be rendered without giving that company an opportunity to defend.

The aim of a court of equity is to do complete justice by deciding upon and settling the rights of all persons directly interested in the subject of the suit, so as to make the performance of the order of the court safe to those who are required to obey it, and to prevent future litigation. To accomplish this end, all persons materially interested in the subject ought generally to be parties to the suit. There is a class of persons who are not only termed necessary parties, but who are indispensable parties, to wit, persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience. California v. Southern Pacific Co., 157 U. S. 229, 250, 15 Sup. Ct. 591, 39 L. Ed. 683; Gregory v. Stetson, 133 U. S. 579, 10 Sup. Ct. 422, 33 L. Ed. 792; Minnesota v. Northern Securities Co., 184 U. S. 199, 22 Sup. Ct. 308, 46 L. Ed. 499. We think that the application of this rule shows that the Summit Lumber Company is a necessary party to this suit.

Although the appeal is taken from an interlocutory order continuing in force an injunction, if the court is of opinion that relief cannot be granted, and that on the final hearing the bill must be dismissed, it is the duty of the court to save both parties the expense of further litigation by making a final disposition of the case. Smith v. Vulcan Iron Works, 165 U. S. 518, 17 Sup. Ct. 407, 41 L. Ed. 810.

The Summit Lumber Company and the complainant both being corporations created under the laws of the same state, and, for the purposes of jurisdiction, citizens of the same state, the jurisdiction of the Circuit Court will be defeated when it is made a party; and yet its interest in the case is such that the relief called for by the bill cannot be granted without having it before the court as a party.

It follows that the decree continuing the injunction must be reversed, and the cause remanded, with directions to dismiss the bill (Cabaniss v. Reno Min. Co., 116 Fed. 318, 323, 54 C. C. A. 190), and it is so ordered.