GUARDIAN TRUST CO. v. KANSAS CITY SOUTHERN RY. CO. et al.†

(Circuit Court of Appeals, Eighth Circuit. April 2, 1909.)

No. 2,827.

1. COURTS (§ 508*)—CONFLICT OF JURISDICTION—SUBSEQUENT ACTIONS FOR SAME CAUSE IN ANOTHER JURISDICTION NOT STAYED—FACTS—CONCLUSION.

In a suit in the United States Circuit Court founded on a creditors' bill against the Belt Company, a debtor, the Trust Company, a secured creditor, and others, the Southern Company, a purchaser at foreclosure sales, intervened. The purpose of the suit was to apply the property which the Trust Company had received from the Belt Company and from others to the payment of the claims of the creditors of the latter company. The issue of the state of the accounts between the Trust Company and the Belt Company had arisen, and they had stipulated that there should be an accounting between them in the creditors' suit, and that judgment for the amount due should be rendered against the party found to be the debtor. The Belt Company had alleged that certain of its promissory notes held by the Trust Company were void, and prayed that they be canceled. The Southern Company had intervened and claimed the property which the Trust Company had received from the Belt Company and from the other corporations. Thereupon the Trust Company brought three actions at law in a state court against the Southern Company, on the grounds that the Belt Company was indebted to it upon the promissory notes and upon an open account, and that the Gulf Company was also indebted to it, and that the Southern Company had assumed and agreed to pay to it all these debts. Upon these facts the Southern Company, upon a dependent bill in the equity suit, secured an injunction against the prosecution of the actions at law in the state court. *Held:*

(1) The prosecutions of the actions at law would not prevent the effectual decision of the issues and the administration of the rights and remedies involved in the equity suit.

(2) It would not withdraw or interfere with the legal custody of any specific property which the national court had acquired, or prevent in any degree its subsequent disposition of that property.

(3) The Trust Company had the legal right to prosecute its actions at law in the state court, and the issue of the injunction was an error.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1418–1430; Dec. Dig. § 508.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

†Rehearing denied June 5, 1909.

**2. COURTS (§ 508*)—INJUNCTION—PERSONAL ACTIONS FOR SAME CAUSE IN ANOTHER JURISDICTION NO GROUND FOR.**

The pendency in another jurisdiction of an action in personam for the same cause which involves no claim to or lien upon any specific property in the possession or under the dominion of a national court of equity, and no issue of which it has acquired exclusive jurisdiction, presents no ground for a dependent bill or an injunction to stay the action at law.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1418–1430; Dec. Dig. § 508.*]

**3. COURTS (§ 475*) — INJUNCTION — WHEN ISSUED TO PROTECT JURISDICTION AGAINST PROCEEDINGS IN OTHER COURTS.**

A court may, by means of a dependent bill and by the use of injunctions and writs of assistance, prevent the prosecution in other courts by the parties to a suit before it of all subsequent actions at law or suits in equity, (1) which will prevent its effectual determination of the issues and its administration of the rights and remedies of which it has acquired exclusive jurisdiction in the litigation before it, or (2) which will withdraw or interfere with the dominion it has acquired over specific property to such an extent that its determination of the controversy about it and the enforcement of its ultimate decree concerning it may be in any degree prevented.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 475.*]

**4. ACTION (§ 53*)—SPLITTING CAUSE OF ACTION—INJUNCTION.**

Where a complainant presents a part of the existing and known facts which it claims entitles it to an injunction, and fails to secure it, and subsequently presents by another bill the other part of those facts, thereby splitting its cause of action, it exhibits a lack of diligence which is fatal to its second application.

[Ed. Note.—For other cases, see Action, Cent. Dig. § 540; Dec. Dig. § 53.*]

**5. APPEAL AND ERROR (§ 1175*)—DETERMINATION AND DISPOSITION OF CAUSE— BILL WITHOUT EQUITY MAY BE DISMISSED ON APPEAL FROM INJUNCTION.**

Where, on appeal from an order granting a temporary injunction, or appointing a receiver, it clearly appears that there is no equity in the bill, the appellate court may consider and determine that question and direct its dismissal in order to save the parties to the suit further expense resulting from the endeavor to secure impossible relief.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4581; Dec. Dig. § 1175.*]

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Western District of Missouri.

This is an appeal from an order which enjoined the Guardian Trust Company, a corporation, from prosecuting three actions at law against the Kansas City Southern Railway Company, another corporation, which the Trust Company had commenced on March 15, 1905, March 28, 1905, and July 2, 1906, in the circuit court of the county of Jackson, in the state of Missouri, to recover personal judgments against the Southern Company for about $545,-000. The first and second actions were founded upon the claim of the Trust Company that the Kansas City Suburban Belt Railroad Company originally owed it about $500,000, and that the Southern Company had assumed and agreed to pay that debt. The third action was based upon the claim of the Trust Company that the Kansas City, Pittsburg & Gulf Railroad Company originally owed it several thousand dollars, and that the Southern Company had assumed and agreed to pay that debt.

The Southern Company had succeeded to the rights and had assumed the liabilities of a committee of reorganization which had purchased at foreclo-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sure sales in March, 1900, and in December, 1901, the property of the Gulf Company and the property of the Belt Company, respectively, and it was in those years that the Trust Company alleged that its causes of action against the Southern Company accrued. The injunction in this case was issued upon a dependent bill filed on November 16, 1907, by the Southern Company, the Belt Company, and its receiver, in a creditors' suit instituted by the Cambria Steel Company, a judgment creditor of the Belt Company, on September 6, 1900, for the purpose of subjecting the property of the Belt Company to the payment of the judgment of the Cambria Company and to the payment of claims of other creditors of the Belt Company similarly situated. In that suit the Cambria Company made the Belt Company and the Trust Company, but neither the Gulf Company nor the Southern Company, parties defendant, alleged that the Trust Company held the promissory notes of the Belt Company, and that by the account books of the companies the Belt Company appeared to be heavily indebted to the former upon the notes and upon open accounts, and that the Trust Company held a large amount of property which had been delivered to it by the Belt Company to secure this indebtedness, but that in fact the Belt Company was not indebted to the Trust Company, but the latter owed the former, and the Cambria Company prayed for an accounting between the Trust Company and the Belt Company, for the payment of any balance owing by the Trust Company to the Belt Company, for the application of the property which the Trust Company had received from the Belt Company to the payment of the creditors of the latter, for an injunction, and for other relief. Thereupon the court issued a restraining order which forbade the Trust Company to assign, pledge, or dispose of any of the property mentioned in the bill. The Trust Company denied by its answer the equities of the bill, and prayed that it be dismissed. On November 20, 1901, the Belt Company, the Trust Company, and their receivers, stipulated in the Cambria Company's suit that the accounting between the Trust Company and the Belt Company should be expedited, and that a judgment for the amount found due should be rendered against the debtor in that suit. The receivers of the Belt Company then filed a cross-bill in which they alleged that the promissory notes, which evidence a part of the indebtedness of the Belt Company to the Trust Company which the latter company avers in its actions at law was assumed by the Southern Company, were without consideration, and they prayed for an accounting, that these notes be delivered up and canceled, and that they recover of the Trust Company the amount that it should be found indebted to the Belt Company. The Trust Company answered this cross-bill that the notes were made for a valuable and full consideration, that the Belt Company was indebted to it upon the notes and upon other accounts, that the Trust Company was entitled to all the property it had ever received from the Belt Company; and it prayed that its title to that property might be protected, and that it might have judgment against the Belt Company and its receivers for the amount due it.

On February 27, 1905, under a stipulation with the Trust Company and others, the Southern Company filed its intervening petition in the Cambria Company's case, and on May 1st its amended intervening petition, wherein it set forth certain property that had been received by the Trust Company at various times, alleged that by virtue of the foreclosures of the mortgages of the Belt Company, of the Gulf Company, and of other corporations, under which it had become the purchaser, it was entitled to some of this property, to the proceeds of another part of it, and to the value of still another part of it; and it prayed for a recovery thereof from the Trust Company. The Trust Company by an answer denied all the equities of this intervening petition, alleged that the Belt Company was indebted to it, that the Southern Company had assumed and agreed to pay that indebtedness, and prayed that the intervening petition of the Southern Company be dismissed. Meanwhile the three actions at law had been brought in the state court, and in August, 1905, the Southern Company filed a bill in equity and obtained a temporary injunction from the court below against the prosecution of the first two actions at law, and in May, 1906, the order granting that injunction was reversed by this court. Guardian Trust Company v. Kansas City Southern Ry. Co., 76 C. C. A. 615, 146 Fed. 337.

The Southern Company answered in the actions at law, and in May, 1907, it made a motion to stay the proceedings therein upon the same grounds upon which the bill for this injunction rests. The state court denied the motion in June, 1907, and against the protest of the Southern Company upon a second motion of the Trust Company, and after a hearing on September 14, 1907, it set the actions at law for trial on December 2, 1907. On November 16, 1907, the bill for this injunction was filed by the Southern Company and its assistants, the Belt Company and its receiver.

The transcript of the record in this case is voluminous—it comprises 742 printed pages—but no other facts are disclosed therein which can in any way modify the decision which those that have been recited compel.

George H. English, Jr., and Edward P. Gates (John A. Sea, on the brief), for appellant.

Samuel W. Moore and F. H. Wood, for appellees.

Before SANBORN and ADAMS, Circuit Judges, and RINER, District Judge.

SANBORN, Circuit Judge (after stating the facts as above). The cause of action in the suit brought by the Cambria Company, so far as the Trust Company, the Belt Company, and the Southern Company and their receivers are concerned, is the misappropriation by the Trust Company of property which it received from the Belt Company and other corporations, and the relief sought is the recovery from the Trust Company of that property, or of its proceeds, or of its value. The causes of action in the three cases in the state court are the debts of the Southern Company to the Trust Company, and the only relief sought in those actions consists of personal judgments against the Southern Company. The suit in equity is not upon the same cause of action as any of the actions at law. The Trust Company has not in the equity suit prayed or in any way sought to obtain a judgment against the Southern Company on account of any of the causes of action pleaded in the actions at law in the state court.

Counsel for the Southern Company say that the indebtedness of the Belt Company to the Trust Company, and the cancellation of the notes which evidence a part of that alleged debt which the Trust Company claims was assumed by the Southern Company, are at issue and will be ultimately determined upon the accounting in the equity suit, and they argue that if those issues should be determined against the Trust Company in that suit there would be no basis for the alleged assumption of a debt of the Belt Company by the Southern Company, or for any judgments against them. Be it so, but the suit in equity was brought and is pending in the United States Circuit Court for the Western District of Missouri. The actions at law were subsequently commenced and are pending in another jurisdiction, in the circuit court of the county of Jackson of the state of Missouri. Even if the subsequent actions at law were between the same parties and involved the same cause of action, as they do not, these facts would furnish no ground for an injunction against their prosecution. The existence of an earlier suit in equity between the same parties for the same cause in one jurisdiction will not sustain a plea in abatement or an injunction to stay the prosecution of a later action at law in another jurisdiction, where the prosecution of the later action does not

prevent the determination of the issues and the administration of the rights and remedies involved in the former suit. Insurance Company v. Brune's Assignee, 96 U. S. 588, 593, 24 L. Ed. 737; Franklin v. Conrad-Stanford Co., 70 C. C. A. 171, 175, 178, 137 Fed. 737, 741, 744; Ogden City v. Weaver, 47 C. C. A. 485, 489, 108 Fed. 564, 568.

In the first case there were two claimants of the moneys owing by the Insurance Company upon two policies of insurance issued to Brune. One of these claimants, Mrs. Barry, brought a suit in equity in the Supreme Court for the city and county of New York against the Insurance Company, Brune, and his assignee, Whitridge, in which she pleaded her claim to the money, and prayed that the company might be enjoined from paying the amount due upon the policies to Brune or to Whitridge, and that it might be compelled to pay it to her. The Insurance Company, Brune, and Whitridge answered the bill, and the parties made an agreement in the suit that the Insurance Company should pay the money into court, where the ownership of it should be adjudicated. Thereafter, and before the adjudication, Whitridge sued the Insurance Company at law upon the policies for the amount due in the United States Circuit Court for the District of Maryland. Thereupon the Insurance Company exhibited its bill in equity in that court, wherein it set forth the prior suit in New York and prayed for an injunction against the prosecution of the subsequent action at law, but the court refused to issue the injunction and dismissed the bill, and the Supreme Court sustained its action. That court said:

"Certain it is that the plea of a suit pending in equity in a foreign jurisdiction will not abate a suit at law in a domestic tribunal. This was shown in a very able decision made by the Supreme Court of Connecticut, in Hatch v. Spofford, 22 Conn. 485, 58 Am. Dec. 433, where the authorities are learnedly and logically reviewed. See, also, Colt v. Partridge, 7 Metc. (Mass.) 570, and Blanchard v. Stone, 16 Vt. 234."

"If, then, a bill in equity pending in a foreign jurisdiction has no effect upon an action at law for the same cause in a domestic forum, even when pleaded in abatement; if, still more, it has no effect when pleaded to another bill in equity, as the authorities show—it is impossible to see how it can be a basis for an injunction against prosecuting a suit at law. It follows that the refusal of an injunction by the Circuit Court was not erroneous."

In the second case a suit in equity had been brought in a state court of Montana to foreclose a mortgage and to procure a judgment against the maker of the mortgage note for the deficiency after the sale. The sale had been made and reported, and there was a docket entry that $8,805.60 remained unpaid upon the mortgage note, but no decree or judgment had been entered for this amount against the maker of the note, who was a party defendant in the foreclosure suit. The successor in interest of the complainant in that suit then brought an action at law upon the note against its maker in the United States Circuit Court for the District of Utah for the $8,805.60, and recovered. Judge Marshall said:

"Lastly, it is contended that the foreclosure suit is still pending in the state court of Montana for the purpose of obtaining a deficiency judgment, and that such pending suit is ground for abating this action. This is an action at law in personam. It in no way involves any interference with the conduct of the suit in the state court of Montana, nor does it affect any property within the

jurisdiction of that court. Under these circumstances it is settled by the highest authority that the pendency of an action in a state court is no ground for abating an action subsequently brought in a federal court upon the same cause of action. Insurance Co. v. Brune's Assignee, 96 U. S. 588, 24 L. Ed. 737; Stanton v. Embrey, 93 U. S. 548, 23 L. Ed. 983; Ogden City v. Weaver, 108 Fed. 564, 567, 47 C. C. A. 485."

His decision applies to the case at bar, and it was affirmed by this court.

In Ogden City v. Weaver, 47 C. C. A. 485, 489, 108 Fed. 564, 568, the city had brought a suit in equity in the district court for the Third judicial district of the state of Utah against the Bear River Irrigation & Ogden Waterworks Company, called the Irrigation Company, and against the Bear Lake & River Waterworks & Irrigation Company, called the Waterworks Company, and it had obtained an interlocutory decree that a certain contract between the city and Bothwell, under which the companies had been furnishing water to the city, was invalid, and that an accounting should be had between the companies and the city regarding their prior business transactions. In that condition of the equity suit the receivers of the Irrigation Company, who had succeeded to the interests of that company and were bound by all that had been done in the suit in the state court, commenced an action at law against the city upon the Bothwell contract for water furnished to the city thereunder by the Irrigation Company. Counsel for the city contended that the action at law must be stayed on account of the pendency of the suit in equity, but Judge Thayer, delivering the opinion of this court said:

"This contention, however, is based upon a misconception of the character of the present proceeding, which is an action at law, in personam, to recover a sum of money due under a contract. It is not a case which affects the custody of any property over which the state court has first acquired jurisdiction. Neither is it a case which involves any interference with the orderly conduct of the litigation in the state court. It is simply one of those cases, such as frequently occur, where a state court and a federal court, in the exercise of a jurisdiction which rightfully belongs to each, are called upon to determine the same question, and the fact that they may disagree and decide the question differently in no wise interferes with the right of either to proceed. It is well settled that the fact that a suit upon a cause of action is pending in a state court will not sustain a plea of lis pendens to a suit upon the same cause of action subsequently filed in a federal court."

It is equally true that the fact that a suit upon a cause of action is pending in a federal court will not sustain a plea of lis pendens to a suit upon the same cause of action subsequently filed in a state court.

These decisions of the Supreme Court and of this court answer many arguments of counsel in support of this injunction. They establish the propositions that the averments in the equity suit of no indebtedness of the Belt Company and of the invalidity of the notes, together with the prayers for the accounting and for the cancellation of these notes, did not withdraw from the jurisdiction of the state court or prevent the trial in that court of the issue of debt or no debt in the subsequent actions at law therein, for that question was adjudged in the Cases of Brune's Assignee and of Ogden City; that the fact that the remedy at law is not as complete, prompt, and adequate as the remedy in equity, by an accounting or otherwise, is no ground for an

injunction against the prosecution of the actions at law in another jurisdiction, for that question was adjudged in the Ogden City Case, and if that fact would sustain such an action, then no action at law for the same cause as a prior suit in equity could be maintained, for the remedy by the latter is always more complete, adequate, and effective than the remedy at law; that the stipulation between the Belt Company and the Trust Company that an accounting between them should be had and a judgment against the debtor should be rendered in the suit in equity furnish no reason for enjoining the prosecution of the subsequent actions at law, for that question was adjudicated in the Case of Brune's Assignee, where there was a similar agreement between the parties to the action at law. By so much the more is the stipulation in this case ineffectual because the Southern Company was not a party to it, nor to the Cambria Company's Case at the time the stipulation was made.

Counsel contend that the restraining order of September 6, 1900, forbade the actions at law. But the limit of the restraint upon the Trust Company by that order was "from in any manner, directly or indirectly, selling, transferring, assigning, pledging, or otherwise disposing, or parting with the possession, or control of, any of the property, assets, notes, stocks, bonds, claims and demands mentioned and referred to in the bill of complaint," and it in no manner prohibited the Trust Company from collecting by suit or otherwise any of the notes, accounts, or claims there mentioned. It did not require the Trust Company to permit the statute of limitations to run upon its causes of action against the Southern Company or others.

Counsel invoke the conceded rules that a court may, by means of a dependent bill and by the use of injunctions, or writs of assistance, prevent the prosecution by the parties to a suit before it of subsequent actions at law or suits in equity, (1) which will prevent its effectual determination of the issues and its administration of the rights and remedies of which it has acquired exclusive jurisdiction in the litigation before it (Sharon v. Terry [C. C.] 36 Fed. 337; Starr v. Chicago, Rock Island & Pacific Railway Company [C. C.] 110 Fed. 3; French v. Hay, 22 Wall. 250, 22 L. Ed. 857; Harkrader v. Wadley, 172 U. S. 148, 19 Sup. Ct. 119, 43 L. Ed. 399; Dietzsch v. Huidekoper, 103 U. S. 494, 26 L. Ed. 497), or (2) which will withdraw or interfere with the legal custody of specific property which it has acquired, so that its determination of the controversy about it and the enforcement of its decree concerning that property may be in any degree prevented (Farmers' Loan & Trust Company v. Lake Street Elevated R. R. Co., 177 U. S. 51, 61, 20 Sup. Ct. 564, 44 L. Ed. 667; Peck v. Jenness, 7 How. 612, 12 L. Ed. 841; Freeman v. Howe, 24 How. 450, 16 L. Ed. 749; Moran v. Sturges, 154 U. S. 256, 14 Sup. Ct. 1019, 38 L. Ed. 981; Central Bank v. Stevens, 169 U. S. 432, 18 Sup. Ct. 403, 42 L. Ed. 807; Williams v. Neely, 67 C. C. A. 171, 185, 134 Fed. 1, 15, 69 L. R. A. 232; Barber Asphalt Co. v. Morris, 66 C. C. A. 55, 58, 132 Fed. 945, 948, 67 L. R. A. 761; Lang v. Choctaw, Oklahoma & Gulf Ry. Co., 160 Fed. 355, 360, 87 C. C. A. 307; Sullivan v. Algrem, 160 Fed. 366, 370, 87 C. C. A. 318; Gates v. Bucki, 4 C. C. A. 116, 124,

53 Fed. 961, 969). But the prosecutions of the actions at law in question in this case cannot in any way prevent the effective determination of the issues or the administration of the rights and remedies involved in 'the suit in equity in the national court, nor can it interfere with the legal custody of the specific property of which that court has jurisdiction. The liability of the Southern Company to pay the debts, which the Trust Company alleges in the actions at law it has promised to pay, is not in issue and cannot be determined in the suit in equity, and the state court has no jurisdiction over and cannot interfere in, those actions in personam with the specific property which is the subject of the litigation in the federal court. This case falls far within the unquestioned rule that the pendency in a state or other court of an action in personam which involves no claim to· or lien upon specific property in the possession or under the dominion of a national court of equity, and no issue of which that court has acquired exclusive jurisdiction, presents no ground for a dependent bill to stay it. Stanton v. Embry, 93 U. S. 548, 554, 23 L. Ed. 983; Standley v. Roberts, 59 Fed. 836, 844, 8 C. C. A. 305, 314; Barber Asphalt Paving Co. v. Morris, 66 C. C. A. 55, 58, 132 Fed. 945, 948, 67 L. R. A. 761; Merritt v. Barge Co., 79 Fed. 228, 233, 24 C. C. A. 530, 535; Green v. Underwood, 86 Fed. 427, 429, 30 C. C. A. 162, 164; Hughes v. Green, 28 C. C. A. 537, 539, 84 Fed. 833, 835; Hubinger v. Central Trust Co., 36 C. C. A. 494, 496, 94 Fed. 788, 790; City of Ogden v. Weaver, 108 Fed. 564, 568, 47 C. C. A. 485, 492; B. & O. Ry. Co. v. Wabash R. Co., 57 C. C. A. 322, 324, 119 Fed. 678, 680; Ball v. Tompkins (C. C.) 41 Fed. 486, 490; Guardian Trust Co. v. Kansas City Southern Ry. Co., 76 C. C. A. 615, 618, 146 Fed. 337, 340.

There is another objection to this injunction. The issue of it was not a matter of right. It rested in the discretion of the court, not in its arbitrary whimsical will, but in its sound judicial discretion, informed and directed by the principles, rules, and practice of equity jurisprudence. The good faith and the reasonable diligence of the moving party and his probable irreparable injury if the injunction was not issued were indispensable conditions to the decision that it should issue. The actions at law which were enjoined were commenced in the state court in March, 1905, and in July, 1906. In the month of July, 1905, the Southern Company filed its first bill to enjoin the prosecution of the first two actions, and obtained an order for a temporary injunction, which was reversed by this court in May, 1906. At the time it filed this first bill all the facts which it now claims entitle it to this second injunction existed and must have been known to it, but it failed to plead them. In May, 1907, the Southern Company made a motion in the state court to stay the progress of the actions at law upon the same grounds which it presented to the court below in the present bill, and the state court denied its motion. In September, 1907, that court set the actions at law pending in it for trial upon the motion of the Trust Company on December 2, 1907. On November 16, 1907, the present bill was filed, and for the first time the Southern Company prayed the court below to stay these actions for the reasons now urged, which had existed during all the time after March, 1905. The failure of that company to present these reasons in its former bill,

the splitting of its cause of action for this injunction which that failure wrought, the unnecessary delay and expense thereby imposed upon the litigants in this suit, establish such a deleterious lack of diligence as appeals with compelling force to the discretion of a court of equity to deny such an injunction. And, when to this inexcusable and expensive delay is added the fact that the Trust Company had the undoubted legal right to prosecute these actions at law so that no legal injury could result to the Southern Company therefrom, the conclusion is irresistible, not only that the injunction was erroneously issued, but that there was no equity in the supplemental bill upon which it is founded.

Where, on an appeal from an order granting or continuing a temporary injunction, or from an order appointing a receiver, the equity of the bill is challenged and the attack upon it appears to be well founded, the power is conferred, and the duty is imposed, upon the appellate court to consider it, and, if it is of the opinion that the relief sought by the bill cannot be granted, to so decide, and thus to save the parties to the suit further expense resulting from the endeavor to secure impossible relief. Smith v. Vulcan Iron Works, 165 U. S. 518, 524, 17 Sup. Ct. 407, 41 L. Ed. 810; Highland Avenue & Belt R. R. Co. v. Columbian Equipment Co., 168 U. S. 627, 630, 18 Sup. Ct. 240, 42 L. Ed. 605; Cabaniss v. Reco Mining Co., 116 Fed. 318, 320, 54 C. C. A. 190, 192; Chicago Wooden Ware Co. v. Miller Ladder Co., 133 Fed. 541, 545, 66 C. C. A. 517, 521; Arkansas Southeastern R. Co. v. Union Sawmill Co., 154 Fed. 304, 311, 83 C. C. A. 224, 231; Mann v. Gaddie, 158 Fed. 42, 48, 88 C. C. A. 1; Shubert v. Woodward (C. C. A.; filed February 4, 1909) 167 Fed. 47.

The order for the issue of the injunction must be reversed, and the case must be remanded to the court below with directions to dismiss the supplemental bill for want of equity; and it is so ordered.

And it is further ordered that the mandate in this case issue ten (10) days after the filing of this opinion.