## GUARDIAN TRUST CO. v. KANSAS CITY SOUTHERN RY. CO.

(Circuit Court of Appeals, Eighth Circuit.   May 31, 1906.)

No. 2,329.

1. COURTS—FEDERAL COURTS—EQUITY PRACTICE—DEPENDENT SUIT MAINTAINABLE TO ENFORCE DECREE AND PROTECT TITLE THEREUNDER BY INJUNCTION.

A federal court sitting in equity may by means of a dependent suit and by the use of injunctions or writs of assistance enforce its decrees and protect titles made thereunder against the re-litigation in state or other courts of issues it has determined and against the litigation of questions of which it has lawfully acquired and retained exclusive jurisdiction.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts; §§ 799, 801, 1355–1358.

Enjoining proceedings in state courts, see note to Garner v. Second Nat. Bank, 16 C. C. A. 90; Central Trust Co. v. Grantham, 27 C. C. A. 575; Copeland v. Bruning, 63 C. C. A. 437.]

2. SAME—DEPENDENT BILL—ACTION IN PERSONAM WILL NOT SUSTAIN.

The pendency in a state or other court of an action in personam which involves no issue of which the federal court has acquired exclusive jurisdiction, no claim to, or lien upon specific property in the possession or under the dominion of a federal court of equity, presents no ground to sustain a dependent bill to stay the action.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, §§ 1355–1358, 1418–1430.]

3. MORTGAGES—FORECLOSURE—SUBJECT MORTGAGED PROPERTY, OBJECT APPLICATION OF THIS SPECIFIC PROPERTY TO MORTGAGE DEBT—PERSONAL LIABILITIES OTHERWISE IMMATERIAL.

The subject of a suit to foreclose a mortgage is the specific property mortgaged. Its object is the subjection of all liens thereon to that of the mortgage and the application of the specific property to the payment of the mortgage debt.

The personal liabilities of the parties and of the purchaser at the sale in such a suit are immaterial save as they condition the accomplishment of this object.

4. SAME—FORECLOSURE—ACTION IN PERSONAM ON LIABILITY OF PURCHASER FOR MORTGAGOR'S DEBT UNDER REORGANIZATION SCHEME NO GROUND FOR DEPENDENT BILL OR INJUNCTION WHERE NOT LITIGATED IN FORECLOSURE SUIT.

An action against the purchaser at a foreclosure sale upon its alleged liability to pay a debt of the mortgagor founded on the execution of a plan of reorganization under which the purchaser was organized and pursuant to which it bought the property, is not an invasion of the exclusive jurisdiction of the court which rendered the decree, usually reserved, to determine the priority and superiority of other liens to the lien of the mortgage, nor an impeachment of the decree or of the title thereunder, in a case in which the question of the purchaser's liability for such a debt has not been litigated in the foreclosure suit.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Western District of Missouri.

Harry S. Mecartney (Jules C. Rosenberger, on the brief), for appellant.

S. W. Moore, for appellee.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge. This is an appeal from an order which prohibited the defendant below, the Guardian Trust Company, from prosecuting two actions at law which it had instituted in the Circuit Court of Jackson County in the state of Missouri against the complainant, the Kansas City Southern Railway Company, to recover a personal judgment against the latter for about $500,000, which the Trust Company claimed that the Kansas City Suburban Belt Railroad Company originally owed it and the Southern Company had assumed and agreed to pay. These alleged facts are disclosed by the record: In 1899 the Kansas City, Pittsburgh & Gulf Railroad Company owned or controlled a line of railroad from Port Arthur in the State of Texas to Belt Junction in Jackson County in the State of Missouri, and the Belt Company owned a line of railroad from that point into Kansas City, so that the two companies controlled a continuous line of railroad from Port Arthur into Kansas City. The railroads of both companies were incumbered by mortgages under which receivers were appointed and foreclosure sales were made by direction of the court below. After a foreclosure suit had been commenced against the Gulf Company and in March, 1900, the Southern Company was incorporated to purchase the properties of the Gulf Company and the Belt Company, pursuant to a plan of reorganization, under which the stockholders of the Gulf Company received a share of stock in the Southern Company for $10 and one share of stock of the Gulf Company and the stockholders of the Belt Company received a share of stock of the Southern Company for each share of stock of the Belt Company, while the unsecured creditors of the latter company received nothing. Under this plan the committee of reorganization was authorized to agree to pay and to pay such unsecured debts of the Belt Company as it selected. At the foreclosure sale of the property of the Gulf Company in March, 1900, the committee caused that property to be purchased and conveyed to the Southern Company, which assumed the obligations of the committee. In September, 1900, four suits to foreclose mortgages upon the property of the Belt Company were commenced. Receivers were appointed, the suits were consolidated, a decree of foreclosure was rendered on November 6, 1900, a sale of the mortgaged property was made there under on January 31, 1901, and was confirmed on January 2, 1902, to the Southern Company. By means of the sale of bonds of the latter company secured upon the property derived from the Gulf Company and from the Belt Company and by the sale of the stock of the Southern Company the committee of reorganization raised and expended a large amount of money and after paying all their expenses turned over to the Southern Company an amount of money far in excess of the aggregate of the unsecured debts of the Belt Company. Each of the decrees of foreclosure contained the usual provisions that the purchaser should pay the costs of foreclosure, the receivers' liabilities and such claims as should be adjudged "prior in lien or superior in equity to the mortgage foreclosed herein upon the property sold," that the preferential character of such claims might be litigated in that suit before the master and the court in a manner therein prescribed, and that for the purpose of enforcing the provisions of the decree the court retained jurisdiction.

The trust company under its former name, State Trust Company, commenced a suit in the circuit court of Jackson county to obtain a decree that certain indebtedness of the Gulf Company to it was prior in lien and superior in equity to that of the mortgage foreclosed in the court below and that court properly enjoined its prosecution because the consideration and adjudication of that question was expressly retained within its exclusive jurisdiction. State Trust Co. v. Kansas City, Pittsburgh & Gulf R. Co. (C. C.) 110 Fed. 10, 16. The trust company was not originally a party to the foreclosure suits against the Belt Company, but upon a motion of the complainant and upon an amendment of its bill to the effect that it was important to have established by judicial decree the fact that the trust company was removed as a trustee under the mortgages sought to be foreclosed, it was made a party. Thereupon it answered and in its answer it set forth the indebtedness of the Belt Company to it, and the reorganization plan whereby the stockholders of the Belt Company became the stockholders of the Southern Company while the unsecured creditors were to receive nothing and the latter company was to become a purchaser of the mortgaged property, and alleged that the effect of this proceeding would be to deprive the unsecured creditors of the Belt Company of its property for the benefit of its stockholders by means of this collusive arrangement between the mortgagor and the mortgagee in violation of the rule announced in Railroad Co. v. Howard, 7 Wall. 392, 394, 409, 415, 19 L. Ed. 117, and Louisville Trust Co. v. Louisville, etc., R. Co., 174 U. S. 674, 683, 19 Sup. Ct. 827, 43 L. Ed. 1130. The court below sustained exceptions to the portions of the answer which set forth these facts and this claim and thereupon the trust company presented an amended and supplemental answer in the consolidated cause which set forth in more detail these alleged facts, reiterated this claim and prayed adequate relief in that suit and it asked leave to file the answer. The court refused this request on condition that the complainant should, as it then did, make and file a written stipulation in the suit, which is embodied in the decree of foreclosure, in these words:

"This decree is entered on the express condition to which the complainant has assented, that it shall be without prejudice to, and shall not bar the right of the Guardian Trust Company, or its receiver, to plead and insist in any litigation now pending or hereafter brought, that the Kansas City Southern Railway Company by virtue of the manner in which it was organized, or for any other reason, is legally or equitably liable for and bound to pay the unsecured debts of the Kansas City Suburban Belt Railroad Company, either in full or to pay them to the extent of the value of any property heretofore acquired by it from the Kansas City Suburban Belt Railroad Company, or that may be hereafter acquired by it from said company by virtue of these foreclosure proceedings, and without prejudice to the right of said Guardian Trust Company or its receiver, to plead and insist, in any pending litigation, or litigation hereafter brought, that the members of the reorganization committee of the Kansas City, Pittsburgh & Gulf Railroad Company assumed to pay and are liable to pay the unsecured debts of the Kansas City Suburban Belt Railroad Company existing at the time the alleged reorganization was undertaken."

It was in this state of the case that the trust company commenced the actions at law in the state court which form the subject of this suit and set forth in its petitions three alleged grounds of action: (1) That

by the execution of the scheme of reorganization and the purchase by the Southern Company of the property of the Belt Company a promise by the Southern Company to pay the debt of the Belt Company was conclusively implied by the law; (2) that the committee of reorganization expressly agreed with the trust company to pay this debt and that the Southern Company subsequently assumed and promised to pay all the obligations of the committee, including this one; and (3) that the execution of the reorganization plan was in legal effect a consolidation of the Gulf Company and the Belt Company into the Southern Company, so that the latter became liable to pay the debts of each of its constituent companies. Rev. St. Mo. 1899, § 1059. The Southern Company has filed a supplemental bill in the foreclosure suit against the Belt Company upon which it has secured an injunction against the prosecution of these actions at law on the ground that the court below has retained exclusive jurisdiction in the foreclosure suit of the adjudication of such claims as are set forth in the actions of the trust company in the state court and that their presentation to that court is an attack upon the regularity, validity and integrity of the foreclosure proceedings. Much has been said in argument regarding the legal sufficiency of the facts alleged in the petitions in the actions at law to constitute causes of action against the Southern Company. This question, however, is not here for our consideration, and the only issue presented for our determination is the question whether or not the court below rightfully issued the injunction to restrain the prosecution of the actions at law in the state court.

A federal court of equity may by means of a dependent suit and the use of injunctions or writs of assistance enforce its decrees and protect the title conveyed thereunder against the re-litigation in state or other courts of issues that it has determined and against the litigation therein of questions of which it has lawfully acquired and retained exclusive jurisdiction. Julian v. Central Trust Co., 193 U. S. 93, 24 Sup. Ct. 399, 48 L. Ed. 629; Riverdale Mills v. Manufacturing Co., 198 U. S. 188, 195, 25 Sup. Ct. 629, 49 L. Ed. 1008; Campbell v. Golden Cycle Min. Co. (C. C. A.) 141 Fed. 610; Freeman v. Howe, 24 How. 450, 460, 16 L. Ed. 749. But the pendency in a state or other court of an action in personam which involves no claim to or lien upon specific property in the possession or under the dominion of a federal court of equity and no issue of which it has acquired exclusive jurisdiction presents no ground for a dependent bill to stay it. Stanton v. Embrey, 93 U. S. 548, 554, 23 L. Ed. 983; Standley v. Roberts, 59 Fed. 836, 844, 8 C. C. A. 305, 314; Barber Asphalt Pav. Co. v. Morris, 66 C. C. A. 55, 58, 132 Fed. 945, 948, 67 L. R. A. 761; Merritt v. Barge Co., 79 Fed. 228, 233, 24 C. C. A. 530, 535; Green v. Underwood, 86 Fed. 427, 429, 30 C. C. A. 162, 164; Hughes v. Green, 28 C. C. A. 537, 539, 84 Fed. 833, 835; Hubinger v. Central Trust Co., 36 C. C. A. 494, 496, 94 Fed. 788, 790; City of Ogden v. Weaver, 108 Fed. 564, 568, 47 C. C. A. 485, 492; B. & O. Ry. Co. v. Wabash R. Co., 57 C. C. A. 322, 324, 119 Fed. 678, 680; Ball v. Tompkins (C. C.) 41 Fed. 486, 490.

The subject of a suit to foreclose a mortgage is the specific property mortgaged. The object of such a suit is to enforce the lien of the mortgage, to subject all other liens thereto and to apply the specific property described in it to the payment of the debt it secures. While the proceeding is not strictly in rem, its subject and its object involve specific property only and the personal obligations of the parties are immaterial to it save as they condition the accomplishment of its purpose. It was for this reason that in the decree in the suit against the Belt Company by means of which the court applied the mortgaged property to the payment of the mortgage debts it required the purchaser to pay only the costs, the receivers' liabilities and such claims as should be adjudged "prior in lien and superior in equity to the lien of the mortgage," reserved jurisdiction to determine the question of the superiority of such liens and made no provision or reservation whatever regarding the litigation or the payment of those claims which were not secured by any lien upon the mortgaged property. The actions at law are founded upon no lien and upon no claim of lien upon any of the property mortgaged and sold under the decree of the court below. They rest upon the single claim that the Southern Company has both impliedly and expressly promised to pay the claims which they disclose to the trust company and the only relief which the latter seeks in them is a general judgment that it may recover the amount of these claims from the Southern Company. How, then, can these actions in any way invade the exclusive jurisdiction, or impeach the decree of the court below or the title of the Southern Company thereunder?

Counsel answers that they do so because the effect of the decree was that the purchaser should take the property free from all demands against the mortgagor company except the obligation to pay the costs of the suit, the liabilities of the receivers and the preferential claims. But these were only parts of the purchase price which it was required to pay to the court for the property. The decree did not undertake to determine, nor did it adjudicate the liabilities of the purchaser to other parties for other debts. Its effect was not to forever exempt the property in the hands of the purchaser from its other promises, debts and obligations, and the ground of the actions at law here is, not the obligation of the mortgagor, but the promise of the Southern Company to pay the former's debt. He says that it was a part of the contract between the court and the purchaser evidenced by the decree that the court should retain jurisdiction of the cause for the purpose of determining what claims or demands against the mortgagor should be paid by the Southern Company, that this reserved jurisdiction is exclusive of any other court and that these actions invade it. But the limit of the jurisdiction over this subject reserved by the decree was to determine what claims were secured by liens upon the mortgaged property prior in time or superior in equity to the lien of the mortgage and the only claims the purchaser was required to pay were these preferential claims, the costs and the receivers' debts. As the trust company claims in its actions no lien prior in right or superior in equity to that of the mortgage, but relies exclusively upon the personal obligation

of the Southern Company, its actions do not in any way impinge upon the exclusive jurisdiction of the court below.

Counsel meets this reply with the argument that while the trust company asserts no specific lien, it will, when it obtains its judgments, levy upon the very property described in the decree and will in that way assert a lien for any unsecured debt of the mortgagor and make it superior to that of the mortgage, and he cites Julian v. Central Trust Co., 193 U. S. 93, 113, 24 Sup. Ct. 399, 48 L. Ed. 629, to the proposition that this is an impeachment of the decree and of the title thereunder. But the levy enjoined in the Julian Case was based upon a judgment in an action against the mortgagor to which the purchaser was not a party, an action founded upon the debt of the mortgagor alone and not upon any independent promise or obligation of the purchaser. The actions at law here under consideration are against the purchaser, and they rest upon its independent liability, not upon that of the mortgagor, and the lien of the levies under the judgments, if any should be rendered therein, will be neither prior in right nor superior in equity to the lien of the mortgage, but will be effective only because the debtor, the Southern Company, has acquired the title to the property and has thereby made it liable for its personal obligations. When a judgment debtor takes title to property which he buys at a foreclosure sale or otherwise the judgment against him immediately settles upon it. When a debtor buys such property it becomes liable to be seized under any judgment that may be subsequently rendered against him. The liens, of such judgments, however, are not effective because superior to that of the forclosed mortgage, but because the lien of the mortgage was superior to them and the title thereunder vested in him who owed the debts evidenced by the judgments. Such will be the effect and the reason for the effect of the judgments and levies in the actions at law in this case if such should be rendered or made.

Counsel contends that the actions at law constitute an attack upon the regularity and integrity of the degree because the trust company asserts therein that under the principles announced in Railroad Co. v. Howard, 7 Wall. 392, 394, 409, 415, 19 L. Ed. 117, and Louisville Trust Co. v. Louisville, etc., R. Co., 174 U. S. 674, 683, 19 Sup. Ct. 827, 43 L. Ed. 1130, and under the law of the consolidation of corporations, the execution of the plan of reorganization and the purchase of the property by the Southern Company at the foreclosure sale charged it with a legal liability to pay the debts of the Belt Company. But the ascertainment and adjudication of the debts and obligations of the Southern Company to others than the court, the holders of the preferential claims, and the receivers for the purchase price of the property, were neither necessary to the determination of the issues presented in the foreclosure suit, nor were they actually litigated or decided therein. It seems that the court below had no jurisdiction to adjudicate them in that suit. United States Trust Co. v. Western Contract Co., 26 C. C. A. 472, 81 Fed. 454; Tod v. Kentucky Union Ry. Co., 52 Fed. 241, 3 C. C. A. 60, 18 L. R. A. 305; State Trust Co. v. Kansas City, Pittsburgh & Gulf R. Co. (C. C.) 120 Fed. 398, 407.

On the other hand, the complainant stipulated and the court provided in its decree that the suit and the adjudication should not bar the right of the trust company to insist in any litigation then pending or thereafter brought that the Southern Company by virtue of the manner in which it was organized, or for any other reason, is legally or equitably bound to pay the unsecured debts of the Belt Company. The result is that the facts disclosed in this suit are insufficient to sustain a dependent bill to enjoin the prosecution of the Trust company's actions at law. Our conclusion is that the order for a temporary injunction herein was improvidently granted because an action for a personal judgment against the purchaser at a foreclosure sale upon its alleged liability to pay a debt of the mortgagor founded on the execution of a plan of reorganization under which the purchaser was incorporated and under which it bought the property is not an invasion of the exclusive jurisdiction of the court which rendered the decree, usually reserved, to determine the priority and superiority of other liens to the lien of the mortgage nor an impeachment of the decree or of the title thereunder in a case in which the question of the purchaser's liability has not been litigated in the foreclosure suit, and because the stipulation of the complainant and the decree in the foreclosure suit, which conditioned the rights of the purchaser here, expressly provide that the foreclosure suit and the adjudication therein shall be no bar to such an action.

The order for the injunction must be reversed, and it is so ordered.