ARCH M. RIFFE, et al., Respondents, v. WABASH RAILWAY COMPANY, a Corporation, and EDWARD B. PRYOR and E. F. KEARNEY, Receivers of WABASH RAILROAD COMPANY, Appellants.

Kansas City Court of Appeals, December 2, 1918.

1. **RAILROADS: Flooding Lands: Pleading: Variance.** Where the petition, in an action arising under section 3150, Revised Statutes 1909, alleges that a railroad failed to construct, and maintain suitable openings across and through its roadbed to carry off water flowing against it in ordinary times thereby causing adjacent land to be flooded and the evidence disclosed that the railroad company had reduced the size of the opening which was the cause of the flooding, there is no variance between the pleading and the proof.

2. ———: Receivers: Purchasers of Road. Where the purchaser of a railroad at a receivers' sale agrees to pay, in addition to his bid, the liabilities incurred by the receiver, this will include damages to land caused by overflow due to failure to construct and maintain lateral drains and openings through the road-bed.

3. ———: Several Defendants. In an action to establish the liability of the receivers of a railroad, for damages for causing to be flooded with water, the right to sue the purchaser and the prior receivers in a county other than where the receivers resided is permitted under section 1732, Revised Statutes 1909, the purchaser, having agreed to pay all liabilities incurred by the receivers, is a necessary party to complete determination of the question involved.

4. ———: Instructions. An instruction in an action under section 3150, Revised Statutes 1909, against a railroad for damages from flood due to its failure to construct and maintain sufficient lateral ditches and openings through its roadbed, which ignored the question of it being from an unprecedented rain, is erroneous.

Appeal from Ray Circuit Court.—*Hon. Frank P. Divelbiss*, Judge.

REVERSED AND REMANDED.

*S. J. & G. C. Jones* and *Lavelock & Kirkpatrick* for appellants.

*Geo. W. Crowley, A. M. Clark* and *M. M. Milligan* for respondents.

TRIMBLE, J.—In June, 1915, plaintiffs' crop north of and adjacent to the right of way of the railroad hereinafter mentioned, was overflowed. This suit was instituted to recover $1200 damages. The jury returned a verdict for $398 and defendants appealed.

Plaintiff's land is about a quarter of a mile west of Rollins creek which flows south to the railroad which crosses said stream, practically at right angles, over what is known as Bridge No. 575; and from thence said creek flows in a southerly direction empting into the Missouri river. The land north of the railroad and west of the creek, including plaintiff's is higher than the land south of the railroad. Consequently, all water, surface

included, flowing against the railroad at the place in question would be obstructed by the roadbed unless suitable and sufficient openings across and through the right-of-way were constructed and maintained, as required by section 3150, Revised Statutes 1909. The only opening available for the proper care of water along the railroad adjacent to the land in question was the channel of the above named creek under said Bridge No. 575. Therefore, if said channel opening were *reduced* so as to be insufficient for said purpose in ordinary times then there would be a failure to have and maintain the statutory openings. And if plaintiff's land was, in an ordinary time, overflowed either because of the failure of the railroad to construct and maintain lateral ditches to connect with said stream, *or* because the railroad has reduced the stream opening under the bridge so that it was no longer sufficient, then, under section 3150, the plaintiff had a cause of action for the loss sustained. The fact that a cause of action would arise from either one of these failures to obey the statute is mentioned here to show that plaintiff, in bringing his suit under the statute, had a right to allege *both* violations, and to submit his case to the jury upon whichever one the evidence disclosed was the cause of the damage. Hence, the fact that plaintiff, included in his petition allegations of a failure to maintain lateral ditches as a cause of the overflow, ought not to be regarded as basing the petition wholly upon that. The petition also alleged a failure to construct and maintain suitable openings across and through the railroad as the cause of the overflow. The statute gives a right of action if either caused it; the petition alleged both did it, and, therefore, the fact that the case was submitted to the jury upon the failure to construct and maintain suitable openings did not create a difference between the pleaded cause of action and the one submitted. The petition hereinabove referred to is the second amended petition, but as it is the only one under which summons was issued and service had, we may regard it as the original foundation of the suit. Even

if it could not be so regarded and even though the first petition alleged only a failure to maintain lateral ditches, nevertheless, plaintiff had the right to include, in his second amended petition, the failure to construct and maintain openings through the roadbed. Only one cause of action existed, namely, the right to recover loss from overflow caused by defendant's failure to obey the statute, though there are two ways in which such failure may arise. However, the first petition charged a failure in both respects; so that even if we could otherwise look to the first petition, as defendant suggests, in order to confirm defendant's view that plaintiff's pleading did not *in fact* rest upon anything more than the failure to maintain lateral ditches, nevertheless, no such confirmation is to be found.

Objection is made to the jurisdiction of the court over the defendants. To understand this properly it should be stated that when the cause of action accrued in June, 1915, the railroad, then belonging to the Wabash Railroad Company, was in the hands of the defendant receivers, under an order and appointment of the Federal Court. In October, 1915, and before the present suit was instituted, there was a sale under the receivership of the railroad to the defendant, Wabash Rail*way* Company. Under the terms of the decree of sale the liabilities incurred by the Receivers while operating the road were taken care of, one of the conditions of purchase being an agreement on the part of the purchaser that if such liabilities were not paid the road itself could be taken from the purchasers and sold to pay the liabilities incurred as aforesaid. Plaintiff's claim comes within that category. The first petition was filed April 8, 1916, and was against the Wabash Rail*way* Company alone. The second amended petition was filed June 9, 1917, in which the Receivers were joined as parties to the suit, the receivership and the sale to the Wabash Rail*way* Company together with its obligation to pay the liabilities hereinabove referred to, all being properly set forth along with a statement of the cause of action as having arisen in June, 1915,

against the Receivers by reason of their failure to obey the statute in the respects hereinabove mentioned. As stated before, it was under the second amended petition the *summons was issued.* Hence, the petitions preceding it are not to be regarded as prior foundations of the suit and for this reason the fact that the first petition was against the Wabash Railway Company *alone* can have no effect upon the question of jurisdiction about to be considered. The suit was brought in Ray county, through which the railroad runs, and summons was issued to said county for the defendant Wabash Rail*way* Company and to St. Louis for the Receivers of the Wabash Rail*road* Company. Service was obtained in these respective places. The situation, then, is this: At the time suit was brought, the railroad had been sold to, and was in the hands of, the Rail*way* Company. It did not commit the wrong but was only the purchaser at a sale wherein one of the conditions of the purchase was that, in addition to the payment of the successful bid, the liabilities incurred by the Receivers while in charge of the road should be paid. Now, defendant's claim is that jurisdiction in Ray county could not be obtained over the Receivers in St. Louis by joining with them the purchaser Railway Company and getting service on it in Ray county. The Receivers, who were the wrongdoers, were not *jointly* liable with the purchaser Railway Company; and the theory is that the latter is not a *real* defendant in the case; furthermore, it seems to be urged that the railway Company did not *contract* to pay those liabilities of the Receivers which, at the time of purchase, had not been reduced to judgment, or made liens, but, as to them, merely bought the property *subject* thereto.

As to this last mentioned feature of defendant's contention, we entertain the view that under the foreclosure decree and the special masters deed, the purchasing Railway Company *did* contract to pay the liabilities incurred by the Receivers. Manifestly, under the terms of the decree, no purchase of the road would have been

200 M. A.—26

allowed, and none was authorized, without an agreement on the part of the purchaser that, in addition to the amount bid, the property purchased should stand good for all of such liabilities and that, too, with no proviso in the decree that the amount expended in the payment of such liabilities should not exceed the value of the road. While the purchase under the decree may not have imposed upon the corporate entity of the purchaser an affirmative, independent, obligation separate from the property purchased and distinct from the privilege of buying same, still such privilege of purchase and the subsequent continued ownership of the property were coupled with and made dependent upon the payment of such receivers' liabilities. As said in Jones v. Chicago, etc., R. Co., 149 N. W. 813, 814, "the decree on its face shows that payment of the bid is not the full measure of the purchaser's liability." In other words, plaintiff had a cause of action against the Receivers and also one against the purchasing Railway Company for the same loss, the cause of action against the latter being dependent upon the validity of the claim against the former. While these causes of action are not joint, that is, the wrong done to plaintiff was not jointly created by the Receivers and the purchaser, yet plaintiff had the right, by establishing the validity of his claim against the Receivers, to enforce payment thereof against the purchaser Railway Company. Under these circumstances it would seem that section 1734, Revised Statutes 1909, permits plaintiff to sue the parties jointly even though he has not, as stated above, a joint cause of action against them. [Cooney v. Pryor, 203 S. W. 629 and cases therein cited.]

As we view the case, the purchaser Railway Company is not an *unreal* or mere pretended defendant having no interest in the controversy, but that it has a real and substantial interest, in fact the most substantial, since, if the claim is valid, it will be the one who will pay it. It is not like those cases where a party having no interest in the case is made a defendant in order to obtain jurisdiction in that venue over

other parties living elsewhere. Nor is it like those cases wherein the plaintiff fails to obtain a judgment against the defendant upon whose *primary* liability the liability of the others depends, as in mechanic's lien suits against the contractor and the owner of the property. Nor is the case at bar like those wherein jurisdiction is obtained over the defendant living outside the venue by joining him with a resident defendant and then, as soon as this is accomplished, dismissing as to the latter and proceeding to judgment against the former. There is no element of trickery or fraudulent purpose in the joining of the two classes of defendants in this case. Nor was the resident defendant, the Railway Company, released in anyway. Although the verdict of the jury mentions only the Receivers, still, the liability of the Railway Company flows as a matter of law, not of fact, from the establishment of the claim against the Receivers. Hence it was not essential for the jury to include the Company in its verdict. And although the judgment authorizes execution against the Receivers only, yet the Railway Company is not released. On the contrary, the judgment shows on its face that the Railway Company is not released but that if it does not pay the judgment the same will be enforced in the manner provided in the Federal Court's decree of foreclosure. The plaintiff did not, after securng local jurisdiction through making the resident Railway Company a party defendant, release the latter in any way. It remained in court and fought the establishment of the claim to the very last and is here fighting it. As said before, it has a real and substantial interest in the matter litigated and hence the trial court's jurisdiction should not be denied as it is in cases where the jurisdiction was obtained only through the method of employing a mere *straw* defendant. The Railway Company was rightfully made a defendant under section 1732 and service was properly obtained under section 1760. The cause of action, which is the foundational basis of the liability of all the defendants and without which no liability against any of them could be predicated, "accrued" in Ray county. Hence the

suit could be brought there. [Section 1754, R. S. 1909; State ex rel. v. Jones, 270 Mo. 230.] The fact that the Receivers had sold the railroad before the suit was instituted makes no difference. They were liable for failure to perform their statutory duty and their liability as such receivers does not terminate until their final discharge. [33 Cyc. 721, 722; 34 Cyc. 411.] And they were suable in a state court. [34 Cyc. 424.]

The evidence amply tended to show that the Receivers for several years, and as late as 1915, reduced the opening under the bridge aforesaid by putting rock in the bottom of the stream at that point and "concreting" it; that this greatly lessened the ordinary carrying capacity of the stream at said point, which theretofore had been sufficient. The Receivers created no other openings in lieu of the one thus reduced. Hence, if the opening, after it was reduced, was insufficient to carry off the water in ordinary times and freshets, then there was a failure to obey the statute in reference to the maintenance of sufficient openings and hence instruction No. 1 for plaintiff did not submit the case upon an issue not pleaded, nor did it introduce matters foreign to the issue. There was ample evidence tending to show that the filling up of the channel caused the overflow and that such opening as was maintained was not sufficient to drain the water in ordinary times. The filling in and concreting of the creek under the bridge so as to impede the waters and cause the overflow and the failure to provide other openings in lieu thereof would render the Receivers liable under section 3150 even though they might have also been liable for negligence under section 3049, Revised Statutes 1909.

While plaintiff's instruction No. 1 could not be understood as requiring openings sufficient to carry off all water no matter how great or unprecedented the flood, but included the question of whether the overflow arose from extraordinary, unusual and unprecedented rainfall, nevertheless, instruction No. 2 also covered the case and directed a verdict without requiring the jury to find that the overflow was not from unprecedented

rainfall. This was error. [Cooney v. Pryor, 203 S. W. 630, 631.] We cannot say that the instructions when taken as a whole cured the error, for the jury could well have followed No. 2 and found a verdict, and we have no way of knowing that they did not. The instruction was not merely indefinite or uncertain in a. matter which the other instructions rendered definite and certain, but, within and of itself alone, authorized a verdict and in that respect was confusing, and also conflicted with defendant's instructions. Hence it cannot be said that, taking all the instructions and reading them as a whole, no error existed by reason of the defect in said instruction No. 2.

For this reason the judgment is reversed and the cause is remanded for a new trial. All concur.