**INTERNATIONAL & G. N. RY. CO. v. CONCRETE INV. CO. (No. 462–3292.)**

(Commission of Appeals of Texas, Section A. June 6, 1924.)

**1. Courts ⬉⇒500—Control of receivership by federal court held not to preclude action in state court on liability of successor company under statute.**

Though plaintiff's demand was originally against old railroad company, where purchasers of property from receiver incorporated under Rev. St. art. 6625, making property liable for old company's debts the basis of its claim against the property, was an independent and voluntary transaction in nature of contract, and fact that federal court had jurisdiction of receivership and determined validity and priority of claims therein did not preclude state court from jurisdiction on claim under statute.

**2. Judgment ⬉⇒735—Plea of res adjudicata held to be without merit, where question was not determined in former suit.**

Where only matters determined in receivership suit in federal court were validity and priority of claims under equity rule, and neither plaintiff nor defendant sought adjudication of question as to purchaser's liability under Rev. St. art. 6625, plea of res adjudicata in action

against purchaser on liability under statute held to be without merit.

**3. Election of remedies ⬉⇒2—Plea of estoppel on election of remedies held without merit.**

Where plaintiff, as intervener in receivership suit, did not seek to adjudicate its claim against purchaser under Rev. St. art. 6625, providing that assets of sold-out railroad shall be liable for certain claims, plea of estoppel in suit on its claim under article 6625, predicated on election of remedies, held without merit, as it was not required to submit such question to adjudication in federal court.

**4. Railroads ⬉⇒30—Purchaser held to have assumed liability against assets of sold-out railroad.**

Railroad company, applying for charter under Rev. St. art. 6625, which provides that assets of sold-out company shall be charged with and subject to payment of certain liabilities and claims in new company's hands, and exercising unqualified ownership over the property purchased, held to have assumed and agreed to pay such liabilities.

**5. Contracts ⬉⇒187(4)—Purchaser of property, assuming payment of prior debt, makes it his own obligation.**

If purchaser of incumbered property takes it subject to prior incumbrance, it is not his obligation, but, if he assumes payment of prior indebtedness, it becomes his own obligation.

**6. Railroads ⬉⇒30—Claims against assets of sold-out railroad held allowable under statute.**

Rev. St. art. 6625, providing that property of sold-out railroad shall be charged in hands of new company with payment of liabilities of old company for current expenses held to include claim for money loaned to pay current expenses and claim on checks issued to reimburse bank cashing checks and vouchers for labor, etc.

**7. Subrogation ⬉⇒1—Defined.**

"Subrogation" contemplates substitution of one person in place of another, whether as creditor or possessor of same right, so that the one substituted succeeds to rights of other in relation of debt, its remedies or security.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Subrogation.]

**8. Railroads ⬉⇒30—Statute liberally construed.**

Rev. St. art. 6625, providing that purchaser of sold-out railroad may form corporation to take over assets, and that assets so purchased shall be chargeable with payment of certain subsisting liabilities and claims is a remedial statute and should be liberally construed.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Suit by the Concrete Investment Company against the International & Great Northern Railway Company. Judgment for plaintiff was affirmed by Court of Civil Appeals (201 S. W. 718), and both parties bring error. Affirmed.

---

⬉⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

S. W. Fisher, of Austin, and Wilson, Dabney & King, of Houston (George Thompson, of Fort Worth, of counsel), for plaintiff.

Lightfoot, Brody & Robertson, of Austin, and Geo L. Edwards, of St. Louis, Mo., for defendant.

GERMAN, P. J. This suit was instituted in the district court of Travis county, Tex., June 12, 1913, by the Concrete Investment Company against the International & Great Northern Railway Company. The parties will be designated here as in the trial court.

On January 13, 1908, the International & Great Northern Railroad Company procured a loan of $50,000 from the National Bank of Commerce of St. Louis, Mo., and delivered to that bank its two notes of that date, due six months after date, each for $25,000. According to findings made by the jury in the trial court, approved by the Court of Civil Appeals, at the time this loan was procured there was an understanding and agreement between the bank and the railroad company that the proceeds of said notes should be used in the payment of current expenses of operation, including labor, taxes, supplies, and repairs, and such proceeds were used by the railroad company for those purposes.

During the month of February, 1908, the International & Great Northern Railroad Company executed and delivered to the National Bank of Commerce six checks drawn in its favor on banks in Texas, aggregating the sum of $53,000. According to the findings of the jury, approved by the Court of Civil Appeals, these checks were delivered by the railroad company to the bank for the purpose of reimbursing the bank for a like amount paid out by it in purchasing from various holders certain vouchers and pay checks, issued by the railroad company in payment for labor and supplies, in connection with the operation of its road. At the time' the checks were drawn the railroad company had on hand sufficient funds to pay same, but the payment thereof was stopped by the receiver, who was appointed February 26, 1908.

These two notes and the six checks were the basis of this suit. They had been assigned by the National Bank of Commerce to plaintiff, Concrete Investment Company, on the ——— day of December, 1912, together with all rights and causes of action represented thereby.

On February 26, 1908, in cause No. 2501 in equity, in the United States Circuit Court for the Northern District of Texas, by proper orders Thos. J. Freeman was appointed receiver of the International & Great Northern Railroad Company, and all of its properties and franchises were placed in the hands of such receiver. March 21, 1908, a master in chancery was appointed to pass upon and classify claims and upon the asserted liens and their priorities. The National Bank of Commerce, the then holder of said notes and

checks, on November 27, 1908, filed its two interventions in said receivership proceeding. It claimed a preference or priority by reason of the fact that the $50,000 had been borrowed for the purpose of paying operating expenses of said railroad, and had been used for that purpose, and that the $53,000, was for operating expenses, and that the revenues of the railroad company had been diverted to the payment of interest on bonded indebtedness and for permanent improvements. Report on these claims was made by the master in chancery February 24, 1913. Both were allowed for the amount claimed, but were classified as common claims, and a preference was denied. By order of the court it was provided that, if no exceptions were filed to a report of the master within 60 days from the date of filing, it should be deemed and held as final and conclusive. No exceptions were filed by the National Bank of Commerce to the report of the master on these claims.

On May 10, 1910, the federal court entered order foreclosing the second mortgage lien against all properties of the International & Great Northern Railroad Company, and ordered the property sold. The decree among other things contained the following:

"The said premises and property are, subject to and the master commissioner shall offer the same for sale subject to the said mortgage dated November 1, 1879, * * * and subject to any unpaid indebtedness or liability contracted or incurred by said defendant railroad company in the operation of its railroad which the court may hereafter order or decree herein to be prior or superior to the lien of the said mortgage dated June 15, 1881, * * * and subject also to such debts, claims, liens and demands of whatsoever nature heretofore incurred or created by the receiver."

"It was further ordered, adjudged and decreed that all questions not hereby disposed of, including the discharge of the receiver and the settlement of his accounts, and including the disposition of all claims heretofore filed herein, or hereafter to be filed in accordance with the provisions of this decree, are hereby reserved for future adjudication; and the court reserves jurisdiction of this cause and of the property affected by this decree for the purpose of final disposition of all such questions and matters; and any party to this proceeding and any claimant whose claims have been or shall be so filed herein may apply to the court for further orders and directions at the foot of this decree. And the court reserves jurisdiction upon due hearing and subject to full right on the part of the purchaser to contest to charge the' property in the hands of the purchaser with any liabilities which have been or which hereafter may at any time be adjudged against the receiver for or by reason of any act or omission of his in the administration of his trust as such receiver."

Sale of all properties and franchises of the railroad company was consummated June 13, 1911, and Frank C. Nicodemus and associates became the purchasers. This sale was con-

firmed by the court September 25, 1911, at which time the receiver was discharged.

On August 10, 1911, Frank C. Nicodemus and his associates organized and incorporated the International & Great Northern Railway Company for the purpose of acquiring, owning, maintaining, and operating the railroad and properties theretofore belonging to the International & Great Northern Railroad Company. September 16, 1911, Thos. J. Freeman, the receiver, delivered to the new corporation all properties and franchises formerly belonging to the sold-out company. On January 16, 1912, the new corporation was permitted to intervene in the cause pending in the federal court, alleging that it had acquired the property and franchises subject to all the reservations and conditions in the decree of foreclosure, and that it desired to contest such claims as were unjust or excessive and which had not been adjudicated prior to that date.

After entry of the decree of foreclosure, and before sale, the Legislature of the state of Texas was called into extraordinary session and enacted what is now article 6625 of the Revised Statutes, being an amendment of prior article 4550, and known as the "I. & G. N. Law," which became effective September 1, 1910. That article is as follows:

"In case of any sale heretofore or hereafter made of the property and franchises of a railroad company within this state, the purchaser or purchasers thereof and associates, if any, shall be entitled to form a corporation under chapter one of this title, for the purpose of acquiring, owning, maintaining and operating the road so purchased, as if such road were the road intended to be constructed by the corporation; and, when such charter has been filed, the new corporation shall have the powers and privileges then conferred by the laws of this state upon chartered railroads, including the power to construct and extend; provided, that, notwithstanding such incorporation, the property and franchises so purchased shall be charged with and subject to the payment of all subsisting liabilities and claims for death and personal injuries sustained in the operation of the railroad by the sold-out company and by any receiver thereof, and for loss of and damage to property sustained in the operations of the railroad by the sold-out company and by any receiver thereof, and for the current expenses of such operation, including labor, supplies and repairs; provided, that all such subsisting claims and liabilities shall have accrued within two years prior to the beginning of the receivership resulting in the sale of such property and franchises, or within two years prior to the sale, if said property and franchises be sold otherwise than under receivership proceedings, unless suit was pending on such claims and liabilities when the receiver was appointed, or when the sale was made; in which event claims and liabilities on which suits were so pending shall be protected hereby as though accruing within two years."

The basis of plaintiff's main contention is this: That, by reason of taking out its char-ter under the provisions of article 6625, the International & Great Northern Railway Company assumed the payment of all subsisting liabilities and claims of the International & Great Northern Railroad Company of the character referred to in the statute, including those here sued upon, and took the property of the old company charged with and subject to the payment of such liabilities; that it acquired said properties and now holds and operates the same charged with and subject to the payment of the claims sued on, and that thereby defendant obligated and bound itself to pay the same.

By amended petition, filed October 21, 1915, it was alleged that the purchase of said railroad properties was in pursuance of a plan of reorganization, by which stock of the new corporation was taken in exchange for bonds and stock of the old corporation; that there was no material change in the ownership of the properties, and that the stockholders of the new corporation received new securities in exchange for the old securities of much larger value than the old securities, and in excess of an amount sufficient to pay plaintiff's indebtedness; that thereby a legal fraud was practiced upon plaintiff, and the defendant holds all of said properties subject to the payment of plaintiff's claims.

The defendant interposed a plea to the jurisdiction of the district court of Travis county, based upon the contention that, under the reservation in the decree of foreclosure, the federal court had expressly reserved and retained jurisdiction over the properties and the right to hear and determine the cause of action undertaken to be asserted and litigated by plaintiff in this suit.

Defendant also pleaded the defense of res adjudicata, claiming that plaintiff's right to assert and enforce a lien upon the properties of defendant had been litigated in the federal court, where such right had been denied, and therefore plaintiff should not be permitted to litigate the same question in this suit. Defendant also pleaded estoppel predicated upon the election of remedies, and the 2 and 4 years' statutes of limitations, both as to the cause of action asserted under the statute, and the cause predicated upon fraud growing out of reorganization.

The trial court gave judgment in favor of plaintiff for the full amounts sued for, and decreed that all of the properties which were purchased by defendant at master's sale were charged with and subject to the payment of the judgment. This judgment was in all things affirmed by the Court of Civil Appeals for the Third District, 201 S. W. 718. Writs of error on behalf of both parties were granted by the Supreme Court. 208 S. W. xvii.

Numerous important questions are raised and have been ably argued by counsel, but they may be grouped around two main contentions:

(1) Are the claims sued upon here such as are described in article 6625 as being a charge upon properties acquired by a purchaser under receivership proceedings?

[1] (2) If they are such, is there any reason why plaintiff is not entitled in this action to establish these claims as a liability against defendant and as a charge upon the properties acquired by it at the master's sale?

We proceed to consider the questions relating to the second contention first.

We are not unmindful of the rule zealously observed . by the federal courts, as set forth in the cases of Lang v. Railway Co., 160 Fed. 355, 87 C. C. A. 307, Railroad Co. v. College, 208 U. S. 38, 28 Sup. Ct. 182, 52 L. Ed. 379, and Julian v. Central Trust Co., 193 U. S. 93, 24 Sup. Ct. 399, 48 L. Ed. 629, to the effect that the court, after sale under receivership proceedings, may reserve jurisdiction over the property to "determine all liens and demands which the purchaser shall pay as a condition of security in the title which the court has decreed to be conveyed." As we interpret these cases, this has application to liens and demands growing out of transaction and contracts which are peculiarly those of the old corporation. Here the basis of the demand originated with the old company, but the ground relied upon as entitling plaintiff to a charge upon the property and to the right to hold defendant liable has no connection whatever with any act or thing done by the old company. It is based entirely upon an independent and voluntary transaction, having the nature of a contract, by and on the part of the purchaser after acquiring the property, and having no connection with the decree of foreclosure or any of the proceedings under which the property was acquired. It is the act of the Legislature and the voluntary action of defendant in procuring its charter under that act which is the foundation of this suit. The agreement on the part of defendant that the property should be charged with and subject to the payment of certain liabilities and demands was one made by the new company, upon a valuable consideration (the granting of its charter), wholly independent of the proceedings in the federal court, and without the necessity of its authority or consent. Although the original claim was within the jurisdiction of the federal court, and it had the exclusive right to determine the validity of same and whether or not it was entitled to any lien, priority, or preference, so far as determined by the acts or contracts of the old corporation, yet, if the purchaser, after acquiring the property, saw proper to voluntarily assume the payment of the demand, or impress upon the property by a new promise or agreement, based upon a valuable consideration, a lien or charge, why should the federal court complain, or by what authority can it relieve defendant from the binding effect of its own voluntary agreement? We think the case is exactly analogous to the case where a bankrupt, in the interim between the adjudication in bankruptcy and the discharge, makes a new promise as touching a provable debt, which has been partly adjudicated by the bankruptcy court; which new promise may become the basis of an action in a state court after the discharge. Zavelo v. Reeves, 227 U. S. 625, 33 Sup. Ct. 365, 57 L. Ed. 676, Ann. Cas. 1914D, 664.

However, .the precise question has in principle been more directly decided by the federal courts in the following cases: W. U. Tel. Co. v. U. S. & M. T. Co., 221 Fed. 545, 555, 137 C. C. A. 113, 123, and Guardian Trust Co. v. K. C. Southern Ry. Co., 146 Fed. 337, 76 C. C. A. 615. In the first case mentioned, the court, through Judge Sanborn, said:

"The prosecution or threatened prosecution in other courts by creditors of a mortgagor of actions in personam against the purchaser at a foreclosure sale under a decree of the foreclosing court, or against those claiming under him, upon alleged promises or legal liabilities made or incurred by such parties to pay the debts of the mortgagor to such creditors, presents no ground for an injunction against such actions by the foreclosing court, because such actions involve no lien upon, title, or interest in, the specific property in the dominion of the foreclosing court, and do not interfere with the disposition thereof by its decree."

And this is true, even though the parties, after reducing their demand to judgment, may levy upon the very property described in the decree. Guardian Trust Co. v. Ry. Co., supra, at page 342 (76 C. C. A. 615).

We therefore hold that the district court had jurisdiction.

[2, 3] The question as to whether the claims here sued upon were such liabilities of the old company as would constitute a charge upon the property under the statute was never raised or adjudicated in the federal court. The only question there determined was that these claims were not entitled to a preference under the equity rule. It would perhaps have been appropriate for the plaintiff or its assignor to have sought to adjudicate this question in the intervention, but they did not do it, nor did the International & Great Northern Railway Company, after its intervention, insist upon this being done. Being based upon an independent agreement made after the purchase, we do not think that the plaintiff or its assignor were required to submit this question to adjudication by the master in chancery or the federal court, and for this reason the plea of res adjudicata and the plea of estoppel are without merit.

[4] We come next to the question of whether or not plaintiff's cause of action was barred by the statute of limitations. This requires us to look more closely into the situation occupied by the defendant in the

light of its action in taking out its charter under the provisions of the law above quoted. Did it thereby expressly or by implication contract to assume and pay the liabilities and claims specified in the statute, which contract can be made the basis of a cause of action against it; or did it merely acquire the property subject to a charge or lien to secure the payment of such liabilities according to their original terms, tenor, and effect? If the first part of this inquiry be answered in the affirmative, then limitation had not run when this suit was filed; if this is answered in the negative, and the latter part of the inquiry in the affirmative, then limitation had run.

This has been the most difficult question in this case, and upon which there was at one time considerable doubt. This has led to an exhaustive study of the question, and we feel fully authorized to say that the conclusion expressed here reflects the well-matured conviction of the Supreme Court.

At the time the International & Great Northern Railway Company was chartered for the purpose of acquiring, owning, and operating the railroad and properties of the old company, article 6625, above set out, was in force. By the act of applying for and receiving its charter the new company contracted and agreed that "the property and franchises so purchased shall be charged with and subject to the payment of all subsisting liabilities and claims" of a certain designated kind. That the state had a right to exact such an obligation as a consideration for the privileges granted by the charter goes without question. What then was the legal effect of such an agreement? The taking of the property with this charge upon it, the continued holding and using of it, thus charged, and the unequivocal assertion of full, complete, and unqualified ownership over all such properties, unmistakably evidences an intention and purpose of making the obligation of paying such liabilities and claims its own; and it therefore follows that such action on the part of the defendant company constitutes a contract of assumption and agreement to pay such liabilities. In Broom's Legal Maxims (4th Ed.) p. 522, is found this significant maxim of law:

"If a person accepts anything which he knows to be subject to a duty or charge, it is rational to conclude that he means to take such duty or charge upon himself, and the law may very well imply a promise to perform what he has so taken upon himself."

[5] The language of the statute, which the defendant company adopted as the measure of its obligation, is different from that usually employed where property is merely taken "subject to" a pre-existing obligation. It is well settled that, if a purchaser of incumbered property takes it "subject to" the prior incumbrance, he does not thereby make it his own obligation, but, if he either express-ly or impliedly assumes the payment of the prior indebtedness, it then becomes his own obligation, and may be treated as a new and independent contract. The statute requires the new corporation to take and hold the property "charged with and subject to the payment" of the subsisting liabilities named. The language clearly implies that if the property is taken and retained then it is subject to the payment by the purchaser of the debts due and which are a charge upon the property. The language used can have no other practical meaning and be effective to accomplish the legislative purpose—the payment of the liabilities mentioned. The early case of Dingeldein v. Third Avenue R. R. Co., 37 N. Y. 575, comes nearest of any we have been able to find being authority. The following brief quotation illustrates the point we are making:

"In Belmont v. Coman, the land is conveyed 'subject to the mortgage.' There is a significant difference between the expression 'subject to a mortgage,' and 'subject to *the payment* of a certain debt.' In the present case, the property of a partnership, consisting of a railroad franchise, a road partly built, cars, horses, sleighs, harness, leases and licenses, is transferred to a corporation, 'subject *to the payment* by the parties of the second part of all the money which the partnership are bound to pay on account of sewers,' specifying the claim in question. They do not take the property 'subject' to an incumbrance of the sewer debt, for there is no such incumbrance. It formed no lien on the property sold, and no connection with the subject unless the debt was intended to be assumed. They take it subject 'to the payment' by themselves of the sewer debt, i. e., to a liability by themselves to pay the debt. They undertake to relieve the partnership from the payment of the debt, and to make themselves liable or responsible for it. That is the subjection or service to which they bind themselves. No other meaning can be given to this language, and no other intent can be imagined in the minds of the parties, than that the *corporation made itself responsible for the payment of the sewer debt.* The whole clause is irrelevant and useless except upon this theory." (Italics by the court.)

The cases of Riffe v. Wabash Ry. Co., 200 Mo. App. 397, 207 S. W. 78, and Paulson v. Wabash Ry. Co. (Mo. App.) 207 S. W. 81, by the Kansas City Court of Appeals, are pertinent. In these cases one of the conditions of purchase imposed by decree of sale of a railroad being an agreement of the purchaser that, if liabilities incurred by the receivers while operating the road were not paid, the road might be taken from the purchaser and sold to pay same; and the question arose as to whether, under these terms, the purchaser contracted to pay the liabilities of the receivers, or merely bought the property subject to them. On this the court say:

"As to this last-mentioned feature of defendant's contention, we entertain the view that

under the foreclosure decree and the special master's deed the purchasing railway company did contract to pay the liabilities incurred, by the receivers. Manifestly, under the terms of the decree, no purchase of the road would have been allowed, and none was authorized, without an agreement on the part of the purchaser that, in addition to the amount bid, the property purchased should stand good for all of such liabilities, and that, too, with no proviso in the decree that the amount extended in the payment of such liabilities should not exceed the value of the road. While the purchase under the decree may not have imposed upon the corporate entity of the purchaser an affirmative, independent obligation separate from the property purchased and distinct from the privilege of buying same, still such privilege of purchase and the subsequent continued ownership of the property were coupled with, and made dependent upon, the payment of such receivers' liabilities."

The Courts of Civil Appeals seem to have uniformly held the purchaser personally liable under this article of the statutes for causes of action which arose against the receiver during the pendency of the receivership, and claims against the sold-out company of the character named in the statute are placed in exactly the same class with claims against the receiver. Freeman et al. v. McElroy (Tex. Civ. App.) 149 S. W. 428 (writ refused); M., K. & T. Ry. Co. et al. v. Gray (Tex. Civ. App.) 160 S. W. 435; Freeman et al. v. Walker & Sons (Tex. Civ. App.) 175 S. W. 1133. In this last case a plea of limitation was involved, and the court apparently was inclined to the opinion that the 2 years' statute was applicable; the time to be calculated from the date of the purchase and receipt of the property on September 16, 1911.

The present suit was filed within 2 years from the date on which charter was granted to defendant company, and it is unnecessary for us to decide whether the statute applicable to an implied contract, or whether the statute applicable to written contracts, applies.

In the case of International G. R. R. Co. v. Oehler, 262 S. W. 785, decided by the Court of Civil Appeals at Texarkana, April 24, 1924, the precise question of the personal liability of a purchaser, under article 6625, was decided in accordance with the view we have here expressed.

[6-8] There are numerous assignments relating to the next general question, which is this: Are the liabilities sued upon in this action such as are referred to in article 6625 of the statutes? That is, are they such liabilities as will constitute a charge upon the property in the hands of the purchaser, and did it take the property and accept its charter subject to the payment by it of the particular liabilities sued on here? The Court of Civil Appeals has held that the $50,000 represented by the two notes does not constitute such liabilities as are designated by the statute. As to the $53,000 represented by the six checks, the court holds that they are of the character named in the statute. It based its holding upon the principle of subrogation. We do not think the principle of subrogation has anything to do with the matter. Subrogation contemplates the substitution of one person in the place of another, whether as creditor or the possessor of some right, so that the one substituted succeeds to the rights of the other in relation to the debt or its remedies or security. As to the $50,000, it was found by the jury that at the time the notes were executed there was an understanding and agreement between the railroad company and the bank that the proceeds of these notes would be used in the payment of current expenses of operation. It was further found that such proceeds were so used. The statute includes "subsisting liabilities for the current expenses of operation." That these notes represent subsisting liabilities of the old company cannot be disputed. That they were incurred for the current expenses of operation by the old company cannot be denied. But the defendant contends that the transaction amounted to a loan. If it be conceded that it was, yet the very basis of the loan was the agreement to use the money in paying current operating expenses. Being a remedial statute, it must have a liberal construction, and it seems to us that the purpose for which the loan was made (treating it as such) and the use of the money in paying operating expenses are the things which give character to the liability. The notation made by the Supreme Court in granting writ of error accurately and concisely states the correct conclusion upon this matter:

"The statute plainly makes debts having the nature of operating expenses a charge upon the property. Looking to the purpose of the statute, it is difficult for us to see how any distinction can be justly made between such a debt and a debt representing money delivered to the railway company for the specific purpose of paying such expenses, and so used. We think the latter is as fully within the spirit of the statute as the former, and hence within its legal intendment."

While the Court of Civil Appeals has, we think, correctly held that the principle of subrogation is applicable to the $53,000 claim, yet this is not necessary in order to entitle plaintiff to recover thereon. This item of $53,000 is explained in this way: Pay-checks and vouchers were drawn from day to day by the proper official of the railroad company in favor of those who did labor and for other necessary expenses in connection with operation. These were indorsed by the payees, and in due course they passed on to the bank for payment, under the business arrangement between it and the railroad company. The bank paid and became the holder of these various checks and vouchers.

The six checks sued on were intended to reimburse the bank for the money advanced by it in taking up such checks and vouchers. That such checks and vouchers, or the six checks issued in lieu thereof, were subsisting liabilities of the railroad company until the bank actually received the value thereof cannot be disputed. That they came into existence to pay for current operating expenses is not questioned. The fact that they may have satisfied the liability of the railroad company to the different payees does not change the character of the company's liability at all. Its liability to pay the checks and vouchers to the legal holder was exactly the same. This case is entirely different from a case where a special lien is given by statute in favor of certain persons, such as the laborer's lien given by article 5640 of our statutes. In that case the lien may be said to be personal, and subrogation must result by reason of contract, or from equitable considerations. Here the law merely defines certain liabilities, and does not say that a lien or charge shall exist in favor of any particular person. The charge is an incident to the liability and is not associated with the person who did the work or furnished supplies. If the liability was created for current expenses of operation, or for any of the other purposes named in the statute, and is subsisting at the time the purchase takes the property or acquires a charter, he impliedly agrees to pay it and agrees that it shall be a charge upon the property. He does not agree to pay any particular person, and it is immaterial as to who is the legal owner of the liability, if it is a subsisting one.

In view of the purpose of the law, we think that the facts and circumstances bring all of these claims within the clear intendment of the law; and we think that the plaintiff, in accepting its charter and in taking and holding the properties, has done so under an agreement by it that same shall be charged with and subject to the payment by it of all the liabilities declared upon in this suit. This makes it unnecessary to consider propositions with reference to plaintiff's contention that defendant is liable because of fraud in connection with the reorganization of the company. However, the judgment of the district court upon this phase of the case is based upon a finding of fact, which has been upheld by the Court of Civil Appeals as supported by the evidence, and we think this is conclusive.

While the Court of Civil Appeals held that there was no charge upon the property by reason of the statute, yet it did hold that there was such charge because of equitable reasons arising out of the reorganization, and affirmed the judgment of the district court as a whole. While disagreeing with the Court of Civil Appeals as to its holding that the $50,000 item is not within the purview of the statute, it is not necessary to reverse or reform its judgment; and we recommend that the judgment of the Court of Civil Appeals and of the district court be in all things affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.